# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

---

TAMMY J. BRENNAN and MARK A. OWENS,
Co-Personal Representatives of the ESTATE OF
BRIAN A. BRENNAN-BAKER, and TAMMY J.
BRENNAN, Individually,

      Plaintiffs-Appellants,

v

CHIPPEWA COUNTY WAR MEMORIAL
HOSPITAL, INC., d/b/a WAR MEMORIAL
HOSPITAL, HIAWATHA BEHAVIORAL
HEALTH, and NORTHCARE,

      Defendants-Appellees.

UNPUBLISHED
October 16, 2014

No. 315795
Chippewa Circuit Court
LC No. 11-011565-NH

---

TAMMY J. BRENNAN and MARK A. OWENS,
Co-Personal Representatives of the ESTATE OF
BRIAN A. BRENNAN-BAKER, and TAMMY J.
BRENNAN, Individually,

      Plaintiffs-Appellees,

v

CHIPPEWA COUNTY WAR MEMORIAL
HOSPITAL, INC., d/b/a WAR MEMORIAL
HOSPITAL, and NORTHCARE,

      Defendants,
and

HIAWATHA BEHAVIORAL HEALTH,

      Defendant-Appellant.

No. 318452
Chippewa Circuit Court
LC No. 11-011565-NH

---

TAMMY J. BRENNAN and MARK A. OWENS,
Co-Personal Representatives of the ESTATE OF
BRIAN A. BRENNAN-BAKER, and TAMMY J.
BRENNAN, Individually,

Plaintiffs-Appellants,

v

No. 318594
Chippewa Circuit Court
LC No. 11-011565-NH

CHIPPEWA COUNTY WAR MEMORIAL
HOSPITAL, INC., d/b/a WAR MEMORIAL
HOSPITAL, HIAWATHA BEHAVIORAL
HEALTH, and NORTHCARE,

Defendants-Appellees.

Before: MURPHY, C.J., and SAWYER and M. J. KELLY, JJ.

PER CURIAM.

In this suit involving claims for wrongful death, plaintiffs, Tammy J. Brennan and Mark A. Owens, as personal representatives of the estate of Brian Brennan-Baker, and Brennan in her individual capacity, appeal by leave granted the trial court's order granting summary disposition in favor of defendant NorthCare in Docket No. 315795. In Docket No. 318452, defendant, Hiawatha Behavioral Health (Hiawatha), appeals the trial court's order denying its motion for summary disposition premised on governmental immunity. Finally, in Docket No. 318594, plaintiffs appeal by leave granted the trial court's order granting summary disposition in favor of defendant Chippewa County War Memorial Hospital, Inc. (Memorial Hospital). For the reasons more fully explained below, we affirm in part and reverse in part.

The claims in this suit arise from Brennan-Baker's death several days after he hung himself on October 13, 2008. Brennan-Baker was 21 at the time.

## I. NORTHCARE

We first address plaintiffs' contention that the trial court erred when it granted NorthCare's motion for summary disposition. Specifically, plaintiffs argue there were issues of fact that could not be resolved on summary disposition. They maintain their claims against NorthCare sounded in ordinary negligence and not medical malpractice and that their expert, Gerald Shiener, M.D.'s opinion was sufficient to establish proximate cause. This Court reviews de novo a trial court's decision on a motion for summary disposition. *Maple Grove Twp v Misteguay Creek Intercounty Drain Bd*, 298 Mich App 200, 206; 828 NW2d 459 (2012).

A motion under "MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted." Summary disposition under subrule (C)(8) is appropriate "if no factual development could justify the plaintiff's claim for relief." A motion for summary disposition under MCR 2.116(C)(10) "tests the factual support of a plaintiffs' claim." In reviewing a motion under subrule (C)(10), we consider "the pleadings, admissions, affidavits, and other relevant documentary evidence of record in the light most favorable to the nonmoving party to determine whether any genuine issue of material fact exists to warrant a trial." [*Id.* at 206-207 (citations omitted).]

On appeal, there is some question as to whether plaintiffs' claims against NorthCare involve medical malpractice or ordinary negligence. Before the trial court, plaintiffs relied on the affidavit of merit by Brian Perron, Ph.D., who is an expert in social work, to show that NorthCare's social worker, Brian Bezotte, breached the applicable standard of care by failing to properly diagnose and assure appropriate treatment services to Brennan-Baker when he spoke to him on the phone. In its motion for summary disposition, NorthCare primarily argued that plaintiffs could not establish a causal link between Bezotte's acts or omissions and Brennan-Baker's suicide. Because we agree that—whether the claim sounded in ordinary negligence by a professional or medical malpractice—plaintiffs failed to establish a causal link between Bezotte's alleged acts or omissions and Brennan-Baker's death, we need not determine whether the claim sounds in medical malpractice. See *Jenkins v Patel*, 471 Mich 158, 164; 684 NW2d 346 (2004) (explaining that a claim under the wrongful death act, see MCL 600.2922, applies to all claims to recover for a wrongful death, whether under ordinary negligence or medical malpractice).

In order to establish their claim for wrongful death, whether as a claim for medical malpractice or other negligence, plaintiffs had to show that Bezotte breached the standard of care and that his breach proximately caused Brennan-Baker's death. See *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004); *Skinner v Square D Co*, 445 Mich 153, 162-163; 516 NW2d 475 (1994); *Moning v Alfono*, 400 Mich 425, 438, 443; 254 NW2d 759 (1977) (opinion by Levin, J.) (discussing the standard of care applicable to claims premised on ordinary negligence—namely, to act as a reasonable person would act under like circumstances). Proximate cause is a legal term of art that encompasses both cause-in-fact and legal or proximate cause:

The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences.

As a matter of logic, a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries.

Generally, an act or omission is a cause in fact of an injury only if the injury could not have occurred without (or "but for") that act or omission. While a plaintiff need not prove that an act or omission was the *sole* catalyst for his injuries, he must introduce evidence permitting the jury to conclude that the act or omission was *a* cause.

It is important to bear in mind that a plaintiff cannot satisfy this burden by showing only that the defendant *may* have caused his injuries. Our case law requires more than a mere possibility or a plausible explanation. Rather, a plaintiff establishes that the defendant's conduct was a cause in fact of his injuries only if he "set[s] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." A valid theory of causation, therefore, must be based on facts in evidence. And while " '[t]he evidence need not negate all other possible causes,' " this Court has consistently required that the evidence " 'exclude other reasonable hypotheses with a fair amount of certainty.' " [*Craig*, 471 Mich at 86-88 (citations omitted).]

As this Court has explained, a mere correlation between an act or omission and the ultimate injury is not sufficient to establish causation. *Teal v Prasad*, 283 Mich App 384, 392; 772 NW2d 57 (2009). "[A] plaintiff cannot establish causation if the connection made between the defendant's negligent conduct and the plaintiff's injuries is speculative or merely possible." *Id.* For that reason, we cannot here determine whether Bezotte was the cause in fact of Brennan-Baker's suicide and death "by imagining every possible scenario and determining whether the likelihood of [his] death would have diminished in each situation." *Id.* Instead, plaintiffs had an obligation to "provide sufficient evidence to establish a reasonable inference of a logical sequence of cause and effect, and not merely speculate, on the basis of a tenuous connection, that [Brennan-Baker] would not have" attempted suicide and died had it not been for Bezotte's breach of the standard of care. *Id.* at 392-393 (citations omitted).

Plaintiffs failed to present evidence, which, if believed, would permit a reasonable jury to find that, but for Bezotte's breach of the standard of care applicable to his telephone interview with Brennan-Baker, Brennan-Baker would not have attempted suicide and later died. Plaintiff's expert, Shiener, opined that the risk of Brennan-Baker attempting suicide would have been "reduce[d]" had the emergency room physician obtained a psychiatric consultation: "Had a psychiatrist undertaken an assessment, then hospitalization would have been one of the things available to him." But he also admitted that he could not "speak to what his findings would have been at that time because none of your clients ever undertook to call that doctor." Shiener also asserted that hospitalization would have been "most likely" but could not state that hospitalization would have "been invariable or inevitable." Moreover, although Shiener criticized the failure to offer Brennan-Baker voluntary hospitalization, there was no evidence that he would have accepted hospitalization and Shiener did not opine that he could have been involuntarily admitted. That is, Shiener effectively conceded that Brennan-Baker might not have been hospitalized under the facts of this case. In assessing Brennan-Baker's risk, Shiener further indicated, "If you want me to come out and say, no, I don't think a social worker or master level psychologist [or] some other discipline of mental health provider would be adequate; likely not."

Brennan-Baker attempted to hang himself approximately four days after leaving Memorial Hospital's emergency room with instructions to contact his personal physician or to return to the emergency room as necessary. In the emergency room, he was diagnosed as intoxicated and with anxiety, not depression. It was determined that he was not in an emergent situation or at risk for suicide, in part premised on his repeated denials that he was suicidal. Seven hours following this initial evaluation, Brennan-Baker went to Hiawatha and saw Ronald Remondini to determine if he was a candidate for community mental health services. Again, Brennan-Baker did not indicate that he had any intent to engage in self harm, and was provided a telephone number for crisis intervention and a list of possible service providers with encouragement for follow-up. Remondini then connected Brennan-Baker by phone with Bezotte at NorthCare to verify whether he qualified for publicly-funded mental health services. Bezotte determined that Brennan-Baker did not qualify for the services, but encouraged him to seek private care. During the interview with Bezotte, Brennan-Baker denied having any intention of harming himself. It was only days later, after Brennan-Baker went to work, engaged in various social activities with friends and family, including going hunting, that Brennan-Baker became upset and hung himself.

Plaintiffs provided no evidence that had Bezotte complied with the applicable standard of care Brennan-Baker would not have hung himself and ultimately died. Although plaintiffs contend that, had Bezotte complied with the applicable standard of care, there would have been various interventions, they did not present evidence that there would in fact have been a particular intervention and that the intervention would have prevented Brennan-Baker from hanging himself. Without such evidence, plaintiffs' claim against NorthCare was nothing more than speculation. Shiener himself opined that it was unlikely that any mental health professional other than a psychiatrist would have been able to identify Brennan-Baker's suicidal ideation and, therefore, would have taken appropriate preventive action, such as securing hospitalization. Plaintiffs likewise did not present any evidence that, had Bezotte recognized over the phone that Brennan-Baker needed immediate intervention, he could have provided or secured the necessary services. As in *Teal*, one "might speculate that [Brennan-Baker] might not have committed suicide" if he had been detained, "but the parties do not provide evidence identifying the grounds on which this detention could have occurred," or that he would have accepted voluntary hospitalization had it been offered. *Id.* at 394. Plaintiffs merely speculate that some intervention might have diverted Brennan-Baker from his decision to hang himself several days later and after numerous additional interactions that may have played a role in his decision. In fact, Shiener's suggestion that Brennan-Baker would have been responsive to medication is contrary to the record, which shows that Brennan-Baker consistently stated he would refuse the prescription of psychotropic medications. While Shiener asserted that a psychiatric consultation would have prevented Brennan-Baker's suicide, he did not reference or provide "any facts or establish a causal chain of events that would support his opinion." *Id.* at 395. Plaintiffs' failure to establish cause in fact defeated their claim against NorthCare.

Plaintiffs also suggest that defendants each owed a special duty to Brennan-Baker "as a particularly susceptible person." Even assuming that Brennan-Baker had a special susceptibility to suicide on the basis of his prior history, plaintiffs still had to show that the defendants' acts or omissions proximately caused Brennan-Baker's death, which they did not do in NorthCare's case. Because plaintiffs failed to present any evidence that had Bezotte complied with the standard of care, Brennan-Baker would not have attempted to commit suicide and later died, the

trial court properly dismissed their claims against NorthCare. For that reason, we decline to address NorthCare's argument on immunity.

## II. HIAWATHA

In Docket No. 318452, Hiawatha argues the trial court erred when it denied its motion for summary disposition because plaintiffs failed to establish the applicability of an exception to its governmental immunity and plaintiffs failed to present evidence to establish that Hiawatha's agent was the cause in fact of Brennan-Baker's death. The trial court denied Hiawatha's motion for summary disposition after it concluded there was evidence from which a reasonable jury could conclude that Hiawatha's employee's failure to comply with the standard of care caused Brennan-Baker's attempted suicide and death.[1]

> Summary disposition under MCR 2.116(C)(7) is appropriate when a claim is barred by immunity granted by law. In reviewing a ruling pursuant to subrule (C)(7), "[w]e consider all documentary evidence submitted by the parties, accepting as true the contents of the complaint unless affidavits or other appropriate documents specifically contradict them." The applicability of governmental immunity is a question of law that is also reviewed de novo. [*Seldon v Suburban Mobility Auth for Regional Transp*, 297 Mich App 427, 432-433; 824 NW2d 318 (2012) (citations omitted).]

Hiawatha argued it was entitled to immunity because plaintiffs failed to demonstrate that any of the statutory exceptions to immunity applied to the facts of this case. Specifically, it argued that MCL 691.1407(4) was inapplicable because the decedent was not its "patient" and because it was not providing "treatment or care." Even assuming that the exception stated under MCL 691.1407(4) applied to the facts of this case, see *McLean v McElhaney*, 289 Mich App 592; 798 NW2d 29 (2010), we conclude that the trial court erred when it denied Hiawatha's motion.

The trial court denied Hiawatha's motion for summary disposition on the grounds that there was evidence from which a reasonable jury could find that the acts or omissions by Hiawatha's agent caused Brennan-Baker's death. Hiawatha's agent, Remondini, who has a Masters degree in "counseling and personal services," met with Brennan-Baker on October 9, 2008, after Brennan-Baker came in to seek mental health services.

Following a face-to-face interview, Remondini determined that Brennan-Baker had anxiety and did not qualify for Hiawatha's services. Remondini concluded that Brennan-Baker did not need treatment because he denied ongoing suicidal ideation or a history of attempts at self-harm, he had an orientation to the future, he appeared competent, he was sober, and he understood his need for treatment. Under the totality of the circumstances, Remondini felt that Brennan-Baker was not a danger to himself; indeed, Brennan-Baker acknowledged that his

---

[1] We note that the trial court did not directly address Brennan's individual claim for intentional infliction of emotional distress in its order.

suicidal thoughts of the previous evening were "stupid" and stated that he did not want to go through with the thoughts because he did not want to damage his vehicle. Brennan-Baker also declined Remondini's attempt to help him construct a safety plan. Remondini admitted that Brennan-Baker showed signs of depression premised on his situation (that is, his recent relationship problems), but he believed Brennan-Baker's major issue was anxiety. As a result, Remondini put Brennan-Baker in telephone contact with NorthCare to verify if he would qualify for any services. Remondini asserted that he lacked authority to simply provide services because such authorizations originated with NorthCare. Before Brennan-Baker left Hiawatha's facility, Remondini provided him with a list of resources for private mental health services and professionals, along with a business card and instructions regarding a crisis line.

Given the record evidence, we conclude the trial court erred when it determined that there was evidence sufficient to establish a question of fact on causation. As was the case with the evidence concerning NorthCare, plaintiffs failed to establish that, had Remondini complied with the standard of care, Brennan-Baker would not have hung himself and later died. *Teal*, 283 Mich App at 392-393. While opining that a psychiatric consultation was necessary, Shiener could not definitively say that such a consultation would have resulted in Brennan-Baker's hospitalization and could not identify other applicable services, which Brennan-Baker would have accepted or that would have benefited him. Of particular note is the absence in Shiener's opinion of the potential benefit of other intermediate and less intensive services or interventions and the failure to demonstrate that such services or treatments were within the repertoire available to Hiawatha. Shiener's suggestion that Brennan-Baker would have been responsive to medication is contrary to the record; the evidence showed that Brennan-Baker consistently stated he would refuse psychotropic medication. While Shiener baldly asserted that a psychiatric consultation would have prevented Brennan-Baker's suicide, he did not reference or provide "any facts or establish a causal chain of events that would support his opinion." *Id.* at 395. Indeed, Shiener admitted that it was unlikely that any mental health professional other than a psychiatrist would have been able to identify Brennan-Baker's suicidal ideation or could have taken appropriate preventive action, such as securing hospitalization. This testimony suggests that Remondini could not have taken any action to prevent Brennan-Baker's later decision to hang himself. Instead, as in *Teal*, the record here leaves one speculating whether and to what extent any particular intervention might have halted the chain of events that led Brennan-Baker to act as he did. But such speculation is insufficient to establish causation. *Id.* at 394.

Plaintiffs needed to present evidence that would allow a reasonable jury to find that Remondini should have taken a particular action and, had he done so, Brennan-Baker would not have hung himself. This they did not do. Instead, they presented evidence that, had Brennan-Baker been properly evaluated, a psychiatrist might have diagnosed him with suicidal ideation, or might have committed him to a hospital facility, or might have prescribed appropriate medications, or might have engaged in some other intervention, and the hypothetical hospitalization, prescription, or other intervention might have prevented Brennan-Baker from later hanging himself. As in *Teal*, "[p]laintiff[s] failed to establish a reasonable inference, based on a logical sequence of cause and effect that" Remondini's acts or omissions involved a causal chain leading to Brennan-Baker's death. *Id.* Accordingly, the trial court should have dismissed plaintiffs' claims against Hiawatha on the ground that plaintiffs failed to present evidence sufficient to establish a question of fact on causation.

## III. MEMORIAL HOSPITAL

In Docket No. 318594, plaintiffs challenge the trial court's grant of summary disposition in favor of Memorial Hospital premised on the existence of genuine issues of material fact and the trial court's allegedly improper adoption of Memorial Hospital's assertion of the facts. Plaintiffs also contend that criticisms of their expert, Shiener, comprised "character assassinations" and were improper.

Initially, plaintiffs contend that Memorial Hospital improperly relied on paraphrasing of witness testimony but do not identify the specific instances or, more importantly, how they are inaccurate. It is not the responsibility of this Court to "search the record for factual support of a party's claim." *McIntosh v McIntosh*, 282 Mich App 471, 485; 768 NW2d 325 (2009). Plaintiffs have, therefore, abandoned this aspect of their argument. *Id.* at 485.

Police officers accompanied Brennan-Baker to Memorial Hospital's emergency room where the attending nurse, Lisa A. Young, R.N., interviewed him. She asserted that Brennan-Baker told her that he lied to the officers about his suicidal intentions in order to avoid a ticket for drinking and driving. And, when asked, Brennan-Baker denied having any suicidal ideation or plan and denied having been treated for depression. He was later instructed on his discharge to follow-up with Hiawatha should he become depressed or suicidal. A physician in the emergency room, Joseph Marvyn M. Neri, D.O., evaluated Brennan-Baker and Brennan-Baker similarly informed Neri that he lied to the officers to avoid jail. Neri also asked Brennan-Baker if he had any prior suicidal ideation or treatment for depression and Brennan-Baker again denied that he had had such thoughts or treatment.

We agree with the trial court's determination that there was no evidence that any acts or omissions involving Memorial Hospital's agents caused Brennan-Baker's death, which was simply too remote in time and subject to intervening events. Brennan-Baker hung himself four days after his evaluation at Memorial Hospital and after a subsequent evaluation by Hiawatha, where it was determined that he was not in an emergent situation requiring the immediate delivery of mental health services or hospitalization. Brennan-Baker specifically and repeatedly denied suicidal ideation to Memorial Hospital's staff, instead asserting he had lied to the officers to avoid the consequences for drinking and driving. He then resumed his normal work and social activities for several days before taking his life. While Shiener opined that a psychiatrist would have potentially determined the need to hospitalize Brennan-Baker, he could not determine if such services would have been available. In addition, the dispute and arguments centering on the subsequent evaluation by Hiawatha, only hours after Brennan-Baker left the emergency room, as an intervening cause serves to highlight the speculative nature of plaintiffs' attempt to isolate or identify the cause of the suicide. In this case, plaintiffs' evidence amounts to "what if" rather than "but for." Hence, the trial court correctly determined that plaintiffs failed to establish a reasonable inference, based on a logical sequence of cause and effect, that Memorial Hospital's actions triggered the causal chain leading to Brennan-Baker's suicide. See *Teal*, 283 Mich App at 394.

Plaintiffs further criticize Memorial Hospital as having engaged in "character assassination" of their expert, Shiener. In support of this contention, plaintiffs rely on an apparently sarcastic remark concerning Shiener's experience and the number of depositions he has given. Plaintiffs' assertion, however, mischaracterizes opposing counsel's statements when examined in context:

> Okay, so how long would he have been hospitalized? What would that counseling have looked like such that it would have changed how Brian responded to the pool crisis on Monday? Was four days enough? If you read between the lines of Doctor Shiener's deposition or his affidavit. He's a very experienced expert. He is—I don't know how many dep's I have of his. He is so careful about what he says.

> In his affidavit he does not say that those interventions would have been effective to stop this suicide four days later. He says seeing a psychiatrist would have been effective in stopping the suicide. But he doesn't tell us what a psychiatrist['s] treatment plan would look like other than maybe he would have been hospitalized and he would have been counseled. But we don't know how that would [have] changed things or what it looks like.

Read in context, defense counsel's comments merely note that Shiener carefully avoided identifying the specific interventions that should have been made and avoided opining that those interventions would have prevented Brennan-Baker's suicide. Further, any reference to the fact that Shiener's testimony was found to be deficient in the *Teal* case involved factual assertions on the similarity to the testimony involved in this case rather than an assertion that Shiener is simply not worthy of belief. See *Teal*, 283 Mich App at 395.

Plaintiffs also contest the propriety of the trial court's decision to the extent that it relied on MCR 2.116(C)(8). Notably, in its order granting summary disposition to Memorial Hospital, the trial court did not identify the subrule that it relied on. Nevertheless, it is clear from the trial court's ruling that it relied on MCR 2.116(C)(10). Because the trial court properly dismissed plaintiffs' claims against Memorial Hospital under that rule, we need not address this claim of error.

Plaintiffs also contend the trial court erred in determining that their claim against Memorial Hospital premised on the acts and omissions by the registration clerk sounded in medical malpractice and dismissing the claim for failing to comply with the statutory requirements applicable to medical malpractice claims. Plaintiffs argue they should have been afforded the opportunity to amend their complaint and pleadings to correct any deficiencies. However, even assuming that the trial court erred when it determined that the registration clerk was a medical professional subject to claims of medical malpractice, any error would not warrant relief. See *Gleason v Dep't of Transp*, 256 Mich App 1, 3; 662 NW2d 822 (2003) ("A trial court's ruling may be upheld on appeal where the right result issued, albeit for the wrong reason.").

Plaintiffs argue the registration clerk negligently collected and conveyed Brennan-Baker's history and comments to the hospital staff. However, there is no record evidence that the registration clerk received the information that plaintiffs contend had to be relayed to the medical staff. Plaintiffs also failed to present any evidence that the clerk had a common law duty to collect and convey the information at issue; indeed, there is no evidence that the clerk had any obligation—even as a matter of employment duties—to do anything other than collect a person's basic identifying and insurance information. Contrary to Brennan's assertions, Nathan Grenfell, the officer accompanying Brennan-Baker to the emergency room, denied informing the registration clerk that Brennan-Baker was "suicidal." Rather, he said he introduced Brennan-Baker to the clerk and informed her he was "having a rough day" and would like to speak with someone from Hiawatha. The officer denied using the term "suicidal." In addition, Brennan contradicted her own allegations at her deposition. She testified that Brennan-Baker was completing initial paperwork when she arrived at the emergency room. She said that the officers spoke to a nurse and denied seeing them speaking with the registration clerk. Notably, Brennan said she spoke to the registration clerk but only to inquire if she needed to pay for the services and she did not convey any relevant history or information to the clerk.

Notwithstanding these limitations, even if the clerk had a duty to collect and convey information to the medical personnel who actually treated Brennan-Baker, plaintiffs failed to present evidence that, but for the clerk's failure to collect and convey the information, Brennan-Baker would not have harmed himself. See *Case v Consumers Power Co*, 463 Mich 1, 6; 615 NW2d 17 (2000) (stating that causation is an element of every negligence claim). The record shows that the medical personnel who actually treated Brennan-Baker interviewed him and asked him for the necessary information. Therefore, the clerk's failure to convey any of the information provided from her interview with Brennan-Baker could not be the basis for any deficiency in the information held by the staff.

Plaintiffs further contend they should be afforded the opportunity to amend their pleadings and conduct additional discovery to cure any deficiencies. "Leave to amend the pleadings should be freely granted to the nonprevailing party upon a grant of summary disposition unless the amendment would be futile or otherwise unjustified." *Lewandowski v Nuclear Mgt Co, LLC*, 272 Mich App 120, 126-127; 724 NW2d 718 (2006). A court may deny a motion to amend a complaint "for particularized reasons, such as undue delay, bad faith, or dilatory motive on the part of the movant, a repeated failure to cure deficiencies in the pleadings, undue prejudice to the opposing party by virtue of allowing the amendment, or the futility of the amendment." *Boylan v Fifty Eight LLC*, 289 Mich App 709, 728; 808 NW2d 277 (2010). Here, because plaintiffs failed to present evidence to establish causation, it would be futile to give plaintiffs an opportunity to amend the pleadings to more clearly state their claim against the clerk.

Finally, Brennan asserts, as an individual claim, that she has established the elements for a claim of negligent infliction of emotional distress. Brennan contends it was unnecessary that she witness the alleged negligent acts. Rather, she asserts, it was only necessary for her to observe the shocking and resultant injuries.

"Michigan has recognized a cause of action based on negligence in a parent who witnesses the negligent infliction of injury to his or her child and suffers emotional distress as a consequence." *Wargelin v Sisters of Mercy Health Corp*, 149 Mich App 75, 80; 385 NW2d 732 (1986). To establish a claim for bystander liability, the following four elements must be established: "(1) the injury threatened or inflicted on the third person must be a serious one, of a nature to cause severe mental disturbance to the plaintiff; (2) the shock must result in actual physical harm; (3) the plaintiff must be a member of the immediate family, or at least a parent, child, husband or wife; and (4) the plaintiff must actually be present at the time of the accident or at least suffer shock fairly contemporaneous with the accident." *Id.* at 81 (quotation marks and citation omitted).

The trial court correctly dismissed Brennan's individual claim. Citing *Gustafson v Faris*, 67 Mich App 363; 241 NW2d 208 (1976), this Court in *Pate v Children's Hosp of Mich*, 158 Mich App 120, 123; 404 NW2d 632 (1986), stated, "*Gustafson* clearly contemplates a sudden, brief, and inherently shocking accidental event which causes the injury or death, which contemporaneously, and by its very nature, results in emotional and physical injury to the plaintiff." While premised on a different medical need, in *Pate* as "[i]n this case, plaintiff has alleged that [the] death was caused by defendants' negligent omissions two days earlier when the defendants failed to admit decedent for care and observation relative to a[n] . . . ailment, failed to obtain an adequate history, failed to diagnose that decedent was suffering from a [medical condition], and failed to obtain an expert consultation relative to decedent's [medical] condition." *Id.* at 124. As noted by this Court, and applicable to the factual circumstances alleged in this case:

> What is missing from these allegations is the contemporaneous infliction of a tortious injury that could be described as an inherently shocking event. All that the plaintiff has alleged are negligent omissions in the form of nonobservable events that occurred two days prior to the decedent's death. As defendants point out, while presence at the side of a loved one at the time of [his or] her death is certainly a grievous event, without more it is simply not the sort of inherently shocking and sudden event to which the doctrine of bystander recovery for emotional distress and resulting physical injury was intended to apply.
>
> * * *
>
> [T]he fact remains that in this case it was not tortious acts, but instead allegedly tortious omissions which resulted in plaintiff's [son's] death. These alleged omissions were neither inherently shocking and sudden nor were they "fairly contemporaneous" with the emotional trauma suffered by the plaintiff. The elements of the tort pleaded in this case clearly require an intentional or reckless act or an inherently shocking or sudden act or event in order to state a viable cause of action. [*Id.* at 124-125.]

Because this case involves omissions rather than acts, the trial court properly dismissed Brennan's individual claim for the intentional infliction of emotional distress.

## IV. CONCLUSION

The trial court did not err when it dismissed plaintiffs' claims against NorthCare and Memorial Hospital. However, it erred when it denied Hiawatha's motion for summary disposition. Accordingly, we affirm in part, reverse in part, and remand for entry of an order dismissing plaintiffs' claims against Hiawatha.

Affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ William B. Murphy
/s/ David H. Sawyer
/s/ Michael J. Kelly