TEAL v PRASAD

Docket No. 283647. Submitted April 7, 2009, at Detroit. Decided April 14,
2009, at 9:25 a.m.

Carol Teal, as personal representative of the estate of her deceased
husband, Dennis Teal, brought a medical-malpractice action in the
Lenawee Circuit Court against Manish Prasad, M.D., Paul D.
Thielking, M.D., Mark Levine, M.D., P.C., and Herrick Memorial
Hospital, Inc., alleging that their negligence caused Teal to commit
suicide. The decedent had been involuntarily admitted to the
hospital for psychiatric care following a suicide attempt and
committed suicide eight days after his release. The plaintiff alleged
that the defendants committed malpractice by failing to properly
diagnose and treat the decedent and by discharging him prema-
turely without a proper treatment plan. The defendants moved for
summary disposition, arguing that the plaintiff had not estab-
lished a causal link between their actions and the decedent's
suicide. The court, Timothy P. Pickard, J., granted the defendants'
motions, and the plaintiff appealed.

The Court of Appeals *held*:

The trial court did not err by granting the defendants summary
disposition. A medical-malpractice plaintiff has the burden of
proving that he or she suffered an injury that more probably than
not was proximately caused by the defendant's negligence. Proxi-
mate cause includes both cause in fact and legal cause. An act or
omission generally is a cause in fact of an injury only if the injury
could not have occurred but for that act or omission. It need not be
the sole catalyst of the injury, but the plaintiff must introduce
evidence that the act or omission was a cause. A plaintiff cannot
satisfy this burden by showing only that the defendant may have
caused the injury. The plaintiff must set forth in evidence specific
facts that support a reasonable inference of a logical sequence of
cause and effect. The evidence need not negate all other possible
causes but must exclude other reasonable hypotheses with a fair
amount of certainty. Testimony that establishes only a correlation
between conduct and injury is not sufficient to establish cause in
fact. A plaintiff cannot establish causation if the connection made
between the defendant's conduct and the plaintiff's injuries is

speculative or merely possible. The evidence presented in this case contained scant information concerning the decedent's mental state, moods, thoughts, whereabouts, and suicidal tendencies following his release or whether he continued taking the medication prescribed for him during that time. The plaintiff presented no evidence indicating how the decedent's discharge, premature or not, triggered a chain of events leading to his suicide. It is not evident that but for the defendants' decision to discharge the decedent, he would not have killed himself eight days later. The testimony of the plaintiff's expert witness failed to establish a causal connection between the defendants' actions and the suicide. The claim that the defendants' alleged malpractice caused the decedent's death, therefore, constitutes mere speculation. Moreover, a court must find that a defendant's negligence was the cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries. Because the plaintiff failed to establish that the defendants' actions were a cause in fact of the decedent's death, she also failed to establish that their actions were a proximate cause of the death.

Affirmed.

NEGLIGENCE — MEDICAL MALPRACTICE — PROXIMATE CAUSE — CAUSE IN FACT — EVIDENCE OF CAUSE IN FACT.

An act or omission is generally a cause in fact of an injury only if the injury could not have occurred but for that act or omission; the act or omission need not be the sole catalyst of the injury, but the plaintiff must introduce evidence that it was a cause; the plaintiff cannot satisfy this burden by showing only that the defendant may have caused his or her injuries, but must set forth in evidence specific facts that support a reasonable inference of a logical sequence of cause and effect; the evidence need not negate all other possible causes, but must exclude other reasonable hypotheses with a fair amount of certainty; testimony that establishes only a correlation between conduct and injury is not sufficient to establish cause in fact; the plaintiff cannot establish causation if the connection made between the defendant's negligent conduct and the plaintiff's injuries is speculative or merely possible.

*Sommers Schwartz, P.C.* (by *Samuel A. Meklir* and *Richard G. Brewer*), for Carol Teal.

*Kerr, Russell and Weber, PLC* (by *Patrick McLain* and *Daniel J. Ferris*), for Manish Prasad, M.D.

*Magdich & Associates, PC* (by *Karen W. Magdich*), for Paul Thielking, M.D.

*O'Connor, DeGrazia, Tamm & O'Connor, P.C.* (by *Julie McCann O'Connor* and *Richard M. O'Connor*), for Mark Levine, M.D., P.C.

*Tanoury, Corbet, Shaw, Nauts & Essad, P.L.L.C.* (by *Linda M. Garbarino* and *Anita Comorski*), for Herrick Memorial Hospital, Inc.

Before: ZAHRA, P.J., and O'CONNELL and K. F. KELLY, JJ.

PER CURIAM. Plaintiff, Carol Teal, the personal representative of the estate of Dennis Teal, deceased, appeals as of right the trial court's orders granting summary disposition to defendants Manish Prasad, M.D., Paul D. Thielking, M.D., Mark Levine M.D., P.C. (the P.C.), and Herrick Memorial Hospital, Inc. (the hospital), and dismissing her cause of action for medical malpractice. We affirm.

The decedent, Dennis Teal, had a history of depression and alcohol abuse. Plaintiff was Teal's wife, but she had started divorce proceedings in the weeks before his suicide. When this occurred, Teal began drinking more heavily and stopped taking his antidepressant medication. On March 18, 2004, Teal attempted suicide by trying to poison himself with carbon monoxide in his garage. The police found him and sent him to the emergency room at the University of Michigan Hospital for evaluation and treatment, where he was certified for involuntary admission. Teal was transferred to Herrick Memorial Hospital, a hospital providing psychiatric care in Lewanee County, on March 19, 2004.

Defendant Manish Prasad conducted the initial evaluation of Teal and admitted him to the in-patient

unit for monitoring. Dr. Prasad noted that Teal was uncooperative and revealed little information, and he instructed that Teal be monitored for depression symptoms and suicidal intentions and placed Teal back on antidepressants. Dr. Prasad continued to monitor and treat Teal during his time at the hospital.

Defendant Paul Thielking was the on-call physician the weekend that Teal was in the hospital. He first saw Teal on March 20, 2004. When Dr. Thielking assessed Teal, he noted that Teal was much more cooperative and apologized for his lack of cooperation the day before. He discussed wanting to get back on his medication and resume attending Alcoholics Anonymous (AA) meetings. When Dr. Thielking saw Teal again on March 21, Teal stated that he did not have suicidal intentions and acknowledged that he needed treatment and therapy.

Dr. Prasad discharged Teal from the hospital on March 22, 2004.[1] Teal was instructed to continue taking a combination of 150 milligrams of Wellbutrin SR and 20 milligrams of Prozac daily, as well as 50 milligrams of

---

[1] Dr. Luven Tejero, the attending physician, noted in Teal's discharge report that after Teal was placed back on antidepressants and encouraged to participate in individual and group therapy sessions,

[h]e became much more pleasant and cooperative as well as future oriented. His sleep and appetite normalized and he felt much more hopeful about the future. He was able to express appropriate remorse and regret for his recent actions stating that it was "not a good thing" referring to his suicide attempt. He also felt very grateful to the friend who had interrupted the process and also reported talking to him on the phone and thanking him for doing that. The patient also stated that he planned to get back to work as well as continue to remain on his medication. He states [sic] that he wanted to get back in therapy with his counselor and also stated that he would work on getting a psychiatrist to continue his treatment. The patient's participation in individual and group therapy sessions improved greatly and he denied having any further suicidal ideations.

trazodone as needed, to live with either his mother or his sister, and to continue his treatment with follow-up appointments with his therapist and, if necessary, a psychiatrist. On the day of his discharge, Teal signed a safety plan agreeing, among other things, to attend AA meetings.

As part of his discharge plan, Teal was provided with treatment at Livingston Community Center Mental Health (the center). On March 29, 2004, social worker Sarah Berntsen evaluated Teal at the center. At the evaluation, Teal acknowledged that he had on-going thoughts and feelings of suicide, but had no desire or intent to act on them. Teal agreed that he would contact Berntsen if he was contemplating suicide, and she told him to return the following day for a clinical appointment with nurse practitioner Judy Gentz. Teal returned to the center the following day, and Gentz gave him a prescription for trazodone and told him to return for a dual-diagnosis evaluation. Teal left the center and filled the prescription.

Later that day, Teal contacted his daughter, Tracey Hillier, multiple times. During his final phone call to Hillier, he told her that he loved her, that he was going to attempt to call his wife one more time, and that if she didn't answer he "was done" because he "couldn't do it anymore." After she got off the phone with her father, Hillier contacted Teal's sister and asked her to check on Teal. Hillier also called the police, telling them that she was concerned that Teal would try to commit suicide. As these events occurred, Teal committed suicide. By the time the police and Teal's sister arrived at his residence, Teal had hanged himself.

Plaintiff filed a complaint on June 30, 2006, alleging that Drs. Manish Prasad, Luven Tejero, and Paul Thielking had committed malpractice by failing to properly

diagnose and treat Teal and by discharging him from the hospital prematurely and without formulating a proper treatment plan that would address Teal's depression and alcoholism. Plaintiff alleged that the P.C. and the hospital failed to provide physicians and staff members who were competent, skilled, and adequately trained to provide Teal with psychiatric care in accordance with the standard of care. Plaintiff claimed that defendants' negligence caused Teal to commit suicide.

Plaintiff's expert, Gerald Shiener, M.D., testified that defendants violated the standard of care by inadequately diagnosing Teal's condition and providing treatment and follow-up care that did not adequately address his alcoholism and depression. If defendants had done so, Dr. Shiener claimed, it was more likely than not that Teal would not have committed suicide. According to Dr. Shiener, the defendants should have made a better assessment regarding whether Teal was suicidal and should have recognized that Teal's increasingly positive outlook on life over the course of his time at the hospital was an act. Dr. Shiener opined that Teal's decision to end his life arose from his illness and was not a conscious decision, but he also admitted that Teal "was conscious when he made the decision and he had some intent, but his motivation and his choice of that solution arose out of his illness."

Defendants moved for summary disposition under MCR 2.116(C)(8) and (10), claiming that plaintiff had failed to establish a causal link between their actions and Teal's suicide. The trial court granted defendants' motions for summary disposition, recognizing that the causation element had not been established.

On appeal, plaintiff challenges the trial court's orders granting summary disposition to defendants, arguing that Dr. Shiener's testimony established a question

of material fact regarding whether defendants' allegedly negligent decision to discharge Teal on March 22, 2004, directly resulted in his suicide. In particular, she argues that the trial court should have recognized that Dr. Shiener's expert testimony created a question of material fact regarding whether defendants' malpractice was the proximate cause of Teal's death. Plaintiff also contends that defendants discharged Teal without properly treating his alcoholism and depression and with the knowledge that he did not have an appropriate support system at home, thereby placing him in a situation in which it was more probable than not that he would commit suicide. We disagree with plaintiff's assertions of error and conclude that summary disposition was appropriate in this case. Teal's suicide was too remote in time, and likely too influenced by intervening factors, to establish a question of material fact regarding the causation element. We review de novo a trial court's grant of summary disposition under MCR 2.116(C)(8) and (10).[2] *Maiden v Rozwood*, 461 Mich 109, 118; 597 NW2d 817 (1999).

"In an action alleging medical malpractice, the plaintiff has the burden of proving that he or she suffered an

---

[2] A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim on the pleadings alone. *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). "All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant." *Id.* at 119. A motion for summary disposition under MCR 2.116(C)(8) "may be granted only where the claims alleged are 'so clearly unenforceable as a matter of law that no factual development could possibly justify recovery.'" *Id.*, quoting *Wade v Dep't of Corrections*, 439 Mich 158, 163; 483 NW2d 26 (1992). "A trial court tests the factual support of a plaintiff's claim when it rules upon a motion for summary disposition filed under MCR 2.116(C)(10)." *Skinner v Square D Co*, 445 Mich 153, 161; 516 NW2d 475 (1994). "The court's task is to review the record evidence, and all reasonable inferences therefrom, and determine whether a genuine issue of material fact exists to warrant a trial." *Harrison v Olde Financial Corp*, 225 Mich App 601, 605; 572 NW2d 679 (1997). Documentary evidence submitted by the parties is viewed in the light most favorable to the nonmoving party. *Greene v A P Products, Ltd*, 475 Mich 502, 507; 717 NW2d 855 (2006).

injury that more probably than not was proximately caused by the negligence of the defendant or defendants." MCL 600.2912a(2). " 'In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. Failure to prove any one of these elements is fatal.' " *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 492; 668 NW2d 402 (2003), quoting *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995).

" 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). In *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994), our Supreme Court defined these terms as follows:

> The cause in fact element generally requires showing that "but for" the defendant's actions, the plaintiff's injury would not have occurred. On the other hand, legal cause or "proximate cause" normally involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences. [Citations omitted.]

"As a matter of logic, a court must find that the defendant's negligence was a cause in fact of the plaintiff's injuries before it can hold that the defendant's negligence was the proximate or legal cause of those injuries." *Craig, supra* at 87.

The *Craig* Court explained cause in fact and legal causation in more detail:

> Generally, an act or omission is a cause in fact of an injury only if the injury could not have occurred without (or "but for") that act or omission. While a plaintiff need not prove that an act or omission was the *sole* catalyst for his

injuries, he must introduce evidence permitting the jury to conclude that the act or omission was *a* cause.

It is important to bear in mind that a plaintiff cannot satisfy this burden by showing only that the defendant *may* have caused his injuries. Our case law requires more than a mere possibility or a plausible explanation. Rather, a plaintiff establishes that the defendant's conduct was a cause in fact of his injuries only if he "set[s] forth specific facts that would support a reasonable inference of a logical sequence of cause and effect." A valid theory of causation, therefore, must be based on facts in evidence. And while " '[t]he evidence need not negate all other possible causes,' " this Court has consistently required that the evidence " 'exclude other reasonable hypotheses with a fair amount of certainty.' " [*Id.* at 87-88 (emphasis in original; citations omitted).]

The *Craig* Court then noted that testimony that only establishes a correlation between conduct and injury is not sufficient to establish cause in fact because "[i]t is axiomatic in logic and in science that correlation is not causation." *Id.* at 93. Therefore, a plaintiff cannot establish causation if the connection made between the defendant's negligent conduct and the plaintiff's injuries is speculative or merely possible. *Id.*

Plaintiff fails to establish that defendants' decision to discharge Teal early and without a discharge plan was the "but for" cause of Teal's suicide. Admittedly, if defendants had locked Teal away for the rest of his life without access to a piece of rope or cord, he likely would not have hanged himself at his home on March 30, 2004. But this Court cannot determine whether defendants were the cause in fact of Teal's suicide by imagining every possible scenario and determining whether the likelihood of Teal's death would have diminished in each situation. Instead, the requirement is affirmative: plaintiff must provide sufficient evidence to establish " 'a reasonable inference of a logical sequence of cause and effect,' " *Craig, supra* at 87, quoting *Skinner, supra*

at 174, and not merely speculate, on the basis of a tenuous connection, that Teal would not have committed suicide if he had not been discharged on a given day more than a week before.

In this case, Teal's suicide occurred eight days after his discharge from the hospital psychiatric ward. The evidence presented to the trial court established that Teal had been discharged after he realized that suicide was not the answer to his problems, received medication, and recognized the need to resume attending AA meetings and to receive treatment for his mental condition and alcoholism. When he was discharged, Teal agreed to live with a family member, continue taking psychiatric medications, resume AA meetings, and attend follow-up meetings with a therapist and, if necessary, a psychiatrist. Yet after his discharge, Teal's whereabouts were largely unknown until March 29, 2004. The parties presented no conclusive information regarding Teal's mental state during this time, his changing moods over this time, or whether he was taking the medication prescribed for him on his release from the hospital. Plaintiff also presented no evidence indicating how Teal's discharge, whether premature or not, triggered a chain of events leading to Teal's suicide. In the absence of such evidence, plaintiff's claim that defendants' alleged malpractice caused Teal's death eight days later constitutes mere speculation.

The parties dispute whether an intervening cause, such as the failure of Berntsen or Gentz to detain Teal when he came to the center for treatment or his wife's failure to take Teal's telephone calls just before his death, broke the chain of causation linking defendants' alleged negligence to Teal's death. Yet this debate merely illustrates the speculation to which the parties resorted in order to identify the cause of Teal's suicide.

One might speculate that Teal might not have committed suicide if the center had detained him on March 29 or 30, but the parties do not provide evidence identifying the grounds on which this detention could have occurred.

And that is just the point. Any arguments regarding the causes of Teal's suicide are speculative, because there is scant evidence establishing Teal's mental state, thoughts, and suicidal tendencies after his discharge from the hospital. This is not a situation in which defendants knew that Teal was suicidal and would kill himself as soon as he had the chance, yet discharged him and watched as he collected rope, made a noose, and hanged himself from a nearby tree. It was not evident in this case that but for defendants' decision to discharge Teal on March 22, Teal would not have killed himself on March 30. Plaintiff failed to establish a reasonable inference, based on a logical sequence of cause and effect, that defendants' actions triggered the causal chain leading to Teal's suicide.

Dr. Shiener was plaintiff's only expert witness, and the evidence he provided did not establish "but for" causation. Expert testimony is generally required in medical-malpractice cases. *Woodard v Custer*, 473 Mich 1, 6; 702 NW2d 522 (2005); *Locke v Pachtman*, 446 Mich 216, 231-232; 521 NW2d 786 (1994). In *Thomas v McPherson Community Health Ctr*, 155 Mich App 700, 705; 400 NW2d 629 (1986), this Court specifically held that expert testimony is required to establish causation in an action for medical malpractice. However, an "expert opinion based upon only hypothetical situations is not enough to demonstrate a legitimate causal connection between a defect and injury." *Skinner, supra* at 173. Instead, plaintiffs must "set forth specific facts that would support a reasonable inference of a logical

sequence of cause and effect." *Id.* at 174. " '[T]here must be facts in evidence to support the opinion testimony of an expert.' " *Id.* at 173 (citation omitted). " 'The evidence need not negate all other possible causes,' " but the evidence of causation " 'must exclude other reasonable hypotheses with a fair amount of certainty.' " *Id.* at 166, quoting 57A Am Jur 2d, Negligence, § 461, p 442.

Dr. Shiener's testimony failed to establish a causal connection between defendants' actions and Teal's suicide. Dr. Shiener admitted that he had not been given much information regarding Teal's whereabouts between March 22 and 29, 2004. Dr. Shiener noted that the intake report compiled by the center on March 29 merely indicated that after his discharge on March 22, Teal had been attempting to resume his carpentry work to occupy his thoughts and time but had trouble focusing and that he had been contacting friends as needed. Teal also denied having a suicidal intent at the time. Dr. Shiener maintained that defendants' decision to discharge Teal led to his suicide, but he could not refer to any facts or establish a causal chain of events that would support his opinion. Consequently, Dr. Shiener's testimony does not establish that defendants' actions were the cause in fact of Teal's suicide.

Because plaintiff has failed to establish that defendants' actions were a cause in fact of Teal's suicide, plaintiff has also failed to establish that defendants' actions are a proximate cause of Teal's death. See *Craig*, *supra* at 87. Because plaintiff failed to establish the causation element of her medical-malpractice claim, we uphold the trial court's order granting defendants' motions for summary disposition.

Affirmed.