# STATE OF MICHIGAN

# COURT OF APPEALS

---

JASON TORREY and CHRISTINE TORREY,

        Plaintiffs-Appellants,

v

SHERESA WILSON PA, and COMMUNITY
HEALTH CENTER OF BRANCH COUNTY,
d/b/a COMMUNITY HEALTH CENTER OF
BRANCH COUNTY – FAMILY MEDICINE
CLINIC,

        Defendants-Appellees.

UNPUBLISHED
December 11, 2014

No. 318121
Branch Circuit Court
LC No. 11-110626-NH

---

Before: MARKEY, P.J., and SAWYER and OWENS, JJ.

PER CURIAM.

In this medical malpractice action, plaintiffs[1] appeal by right the trial court's order granting defendants summary disposition on the basis that plaintiffs failed to present sufficient expert testimony that defendant physician assistant (PA) Sheresa Wilson's failure to recognize and treat alleged cellulitis in plaintiff Jason Torrey's arms "more probably than not . . . proximately caused," MCL 600.2912a(2), plaintiff's injury: the cellulitis with Fournier's gangrene that subsequently developed in plaintiff's groin after he squeezed a boil in that area. We affirm.

Plaintiff alleges in his complaint that he is a truck driver. On May 11, 2009, he went to defendant Community Health Center of Branch County. Plaintiff asserts that he complained to PA Wilson that he had streaking on his arms and chest tightness, symptoms that he told Wilson he had experienced with previous bouts of cellulitis. According to plaintiff, Wilson told him his purported symptoms were not consistent with cellulitis and refused to inspect plaintiff's arms or prescribe antibiotics that plaintiff requested. Instead, Wilson gave plaintiff cough medicine to treat his chest tightness.

---

[1] The singular plaintiff refers to Jason Torrey the patient alleging malpractice. Christine Torrey's claim is derivative of Jason's.

Subsequently, on May 22, 2009, while he was driving a truck in Wisconsin, plaintiff went to a hospital emergency room in Manitowoc complaining of nausea, fever, and a rash in his groin area. Plaintiff reported a history of cellulitis and boils. At that visit, plaintiff also reported that his present symptoms had started two days earlier, and after he had squeezed a boil in his groin. Plaintiff was admitted to the hospital on Dr. John M. Stern's diagnosis of "[s]crotal and inguinal cellulitis without evidence of crepitation or gangrene." Shortly after his admission, doctors recognized plaintiff's condition as a "necrotizing soft tissue infection of [the] left groin, i.e., Fournier gangrene." Over the next days, doctors performed several debridement surgeries to remove dead and dying soft tissue in plaintiff's groin. Plaintiff was discharged from the hospital on June 9, 2009. His surgical wounds required a "home wound VAC" and follow-up medical care. Plaintiff alleges that PA Wilson breached the standard of care by failing to evaluate and inspect his arm, failing to recognize arm streaking as potentially consistent with cellulitis, failing to prescribe an antibiotic, and failing to advise plaintiff to closely monitor his complaints and seek further medical attention if his condition did not improve. Plaintiffs' allegations regarding the standard of care were supported by an affidavit of merit signed by PA Raymond P. Mooney.

With respect to a causal relationship between PA Wilson's alleged malpractice and his subsequent development of Fournier's gangrene, plaintiff alleged that cellulitis may spread if left untreated, and specifically, may spread through a person's bloodstream or lymph nodes. Plaintiff asserted in his complaint that the cellulitis he had in his arms on May 11, 2009, "spread throughout his body and eventually 'settled' in . . . his scrotum and groin area . . . ." These allegations were somewhat supported by Mooney's affidavit, which stated that cellulitis may "affect tissues underlying the skin and can spread to a person's lymph nodes and bloodstream." Mooney also averred that plaintiff's untreated cellulitis spread throughout his body "including to his scrotum and groin area and caused the necrotizing soft tissue infection (i.e. Fournier gangrene) with which he was diagnosed by his doctors in Manitowoc . . . ." But in his deposition, Money expressly disclaimed that he was offering an expert opinion on causation.

The medical records on plaintiff's admission to the Wisconsin hospital state that plaintiff reported a two-three day onset of his groin symptoms following squeezing a boil in that area; on admission, plaintiff had edema (swelling) in that area but none in his extremities.

Plaintiff did not retain a causation expert but instead relied on the depositions of the medical professionals who treated him. Plaintiff's treating doctors did not support plaintiff's theory that untreated cellulits in his arm or arms migrated to his groin. According to the testimony of Dr. Alan D. Sbar, plaintiff's report of a prior instance of untreated cellulitis was unrelated to the cellulitis that later developed in his groin. Dr. Sbar was also asked about plaintiff's claim that he had told plaintiff that untreated cellulitis spread and settled in plaintiff's groin. Dr. Sbar answered that he could not "relate it to everything that was going on with" plaintiff. Further, Dr. Sbar testified that what plaintiff "describes as the progression of cellulitis is not how I understand it." Specifically, Dr. Sbar testified that the infection he treated in plaintiff's groin "started in [plaintiff's] groin."

Another of plaintiff's treating physicians, Dr. Matthew L. Campbell, testified that cellulits can spread directly to adjacent tissue, but he saw no evidence that plaintiff's groin infection came from another infected part of plaintiff's body. And, although Dr. Campbell admitted it was possible that cellulitis could spread through the blood stream, it was determined

that the bacteria detected in plaintiff's groin infection (anaerobic gram negative and anaerobic gram positive organisms) were consistent with the infection having originated in plaintiff's groin. Further, the history plaintiff gave of having squeezed a boil in his groin two or three days before presenting at the hospital was "a pretty classic story" regarding Fournier's gangrene. By the time Dr. Campbell saw plaintiff, the boil had been surgically removed, but he testified that "wherever that boil would have been is where I would have assumed to have been the nidus of infection."

Dr. Stern, who admitted plaintiff to the hospital, was asked whether cellulitis could have migrated from plaintiff's arms to his groin. Stern answered, "I would say anything is possible, but it's not likely." Stern also testified that four blood samples from plaintiff were cultured and no signs of sepsis[2] were located that might have seeded in plaintiff's groin area. Based on the history plaintiff provided, Stern opined it would be far more likely that plaintiff's infection originated in his groin.

Plaintiff did elicit some speculation from defendants' standard of care expert, PA Amanda Morgan. Morgan testified that she did not believe PA Wilson violated the standard of care. But, she also testified she had "a feeling that [plaintiff] had cellulitis [when he visited the defendant Community Health Center on May 11, 2009] but didn't show [Wilson] where it was." Morgan explained she had "a feeling that [plaintiff] had cellulitis in his groin region but being a man who didn't want to show his groin, he said, I need an antibiotic, I have it, but he didn't tell [Wilson] where." Morgan based her "feeling" on her conclusion that plaintiff felt he was sick, but he did not have cellulitis on his arms. If he did have the arm streaking plaintiff claimed, it would have been visible to Wilson while plaintiff wore a short-sleeved shirt.

Defendants also retained an infectious disease expert, Dr. Michael McIlroy. He testified that cellulitis can spread, but it does so to contiguous parts of the body. Specifically, McIlroy testified that plaintiff's theory that he had arm cellulitis that "got into his blood and then it went through the bloodstream and went back to the skin . . . to the groin and scrotum and then the bacteria went back to the skin and caused cellulitis. That doesn't happen in medicine." So, according to McIlroy, plaintiffs' theory of cellulitis' spreading through plaintiff's bloodstream to his groin "doesn't happen in infectious disease." Dr. McIlroy further testified that the bacteria cultured from plaintiff's groin infection were bacteria not seen in arm infections but rather reside "in the perineum, which is the area outside the rectum, anus, scrotum, that general area." McIlroy opined that plaintiff's "squeezing a boil . . . was the source of the trauma to his skin that allowed the pathogens, from the skin, to get into the scrotal tissue and cause a severe infection."

On defendants' motion for summary disposition, the trial court ruled insufficient expert testimony supported plaintiff's claim that untreated cellulitis in plaintiff's arm repositioned itself to his groin numerous days later. Thus, the trial court ruled that plaintiffs had failed to present evidence to raise a question of fact that it was more probable than not that defendants' alleged

---

[2] "Sepsis is defined as 'the presence in the blood or other tissues of pathogenic microorganisms or their toxins.'" *Dykes v William Beaumont Hosp*, 246 Mich App 471, 475 n 3; 633 NW2d 440 (2001), quoting *Dorland's Illustrated Medical Dictionary* (29th ed), pp 1623-1624.

malpractice caused the Fournier's gangrene in plaintiff's groin. The trial court further ruled that "any testimony that was favorable for plaintiff with respect to causation is speculative, inconclusive and insufficient to support the requirements of MCL 600.2912a(2)." Plaintiffs appeal by right.

This Court reviews de novo a trial court's decision on a motion for summary disposition. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). Under MCR 2.116(C)(10), the moving party must specifically identify the issues for which no factual dispute exists and must support this claim with evidence such as affidavits, depositions, admissions, or other documents. MCR 2.116(G)(4). If the moving party meets its initial burden, the opposing party then has the burden of showing with evidentiary materials, the substance of which would be admissible, that a genuine issue of disputed material fact exists. *Id.*; MCR 2.116(G)(6). "The adverse party may not rest upon mere allegations or denials of a pleading, but must, by affidavits or other appropriate means, set forth specific facts to show that there is a genuine issue for trial." *Patterson v Kleiman*, 447 Mich 429, 432; 526 NW2d 879 (1994).

The trial court must decide the motion only on the basis of substantively admissible evidence submitted up to the time of the motion and view that evidence in a light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 121; 597 NW2d 817 (1999); MCR 2.116(G)(5). Summary disposition is proper if there is no genuine issue regarding any material fact, and the moving party is entitled to judgment as a matter of law. *West*, 469 Mich at 183. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id.*

"'In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury. Failure to prove any one of these elements is fatal.'" *Wiley v Henry Ford Cottage Hosp*, 257 Mich App 488, 492; 668 NW2d 402 (2003), quoting *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). In this case, defendants alleged and supported that no dispute of material fact existed that defendants' alleged malpractice for failing to treat arm cellulitis proximately caused plaintiff's Fournier's gangrene. The trial court agreed and granted the motion.

A medical malpractice plaintiff "has the burden of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants." MCL 600.2912a(2); see also *Teal v Prasad*, 283 Mich App 384, 390-391; 772 NW2d 57 (2009). "Generally, proximate cause is a factual issue to be decided by the trier of fact. But if reasonable minds could not differ regarding the proximate cause of the plaintiff's injury, the court should decide the issue as a matter of law." *Nichols v Dobler*, 253 Mich App 530, 532; 655 NW2d 787 (2002). To prove proximate cause requires establishing two elements: (1) cause in fact and (2) legal cause or proximate cause. *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994), overruled in part on other grounds by *Smith v Globe Life Ins Co*, 460 Mich 446, 455 n 2 (1999). "Cause in fact requires that the harmful result would not have come about but for the defendant's . . . conduct." *Haliw v City of Sterling Heights*, 464 Mich 297, 310; 627 NW2d 581 (2001). "A plaintiff must adequately establish cause in fact in order for legal cause or 'proximate cause' to become a relevant issue." *Skinner*, 445 Mich at 163.

Moreover, "expert testimony is required to establish causation in an action for medical malpractice." *Teal*, 283 Mich App at 394.

A review of the record submitted to the trial court reveals virtually no admissible evidence to create a question of fact that defendants' alleged malpractice for failing to diagnose and treat arm cellulitis existing on May 11, 2009, was a "but for" cause of plaintiff's groin cellulitis or Fournier's gangrene for which plaintiff was admitted to the hospital on May 22, 2009. Plaintiffs rely on hearsay to support their theory of the case that undiagnosed and untreated arm cellulitis spread through his body and settled in his groin. But hearsay is generally inadmissible evidence, MRE 802, and inadmissible evidence will not be sufficient to withstand a supported motion for summary disposition. MCR 2.116(G)(6); *Maiden*, 461 Mich at 121. Further, the purported declarant, Dr. Sbar, testified he saw nothing in his treatment of plaintiff to support this claim. Dr. Sbar specifically testified that plaintiff's groin infection started there; it did not move there from another location.

Plaintiff also relies on speculation from defendants' standard of care expert. PA Morgan's "feeling" that plaintiff had cellulitis situated in his groin when he visited defendant Community Health Center on May 11, 2009, however, does not support either (1) that plaintiff had arm cellulitis at that time, or (2) that the arm cellulitis subsequently migrated to plaintiff's groin. Further, as the trial court noted, speculation will not defeat a supported motion for summary disposition on the element of causation. "Cause in fact may be established by circumstantial evidence, but such proof must be subject to reasonable inferences, not mere speculation." *Wiley*, 257 Mich App at 496, citing *Skinner*, 445 Mich at 163-164.

In this case, the trial court correctly ruled that plaintiffs had failed to create a question of fact that plaintiff "suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants." MCL 600.2912a(2). Consequently, the trial court properly granted defendants summary disposition because there was no material disputed fact that defendants' alleged malpractice caused plaintiff's injury. *Teal*, 283 Mich App at 394-395; *Wiley*, 257 Mich App at 492.

We affirm. As the prevailing parties defendants may tax costs pursuant to MCR 7.219.

/s/ Jane E. Markey
/s/ David H. Sawyer
/s/ Donald S. Owens