# Order

**Michigan Supreme Court**
**Lansing, Michigan**

July 29, 2016

152689

LEO TONDREAU, Personal Representative of the
Estate of SANDRA PEETZ,
        Plaintiff-Appellee,

v

HENRY FORD MACOMB HOSPITAL, a/k/a
HENRY FORD MACOMB HOSPITAL-
CLINTON TOWNSHIP CAMPUS, LI ZHANG,
M.D., and MACOMB ANESTHESIA, P.C.,
        Defendants-Appellees,
and

SACHINDER S. HANS, M.D., P.C., and
SACHINDER S. HANS, M.D.,

        Defendants-Appellants.

_____/

Robert P. Young, Jr.,
Chief Justice

Stephen J. Markman
Brian K. Zahra
Bridget M. McCormack
David F. Viviano
Richard H. Bernstein
Joan L. Larsen,
Justices

SC: 152689
COA: 321514
Macomb CC: 09-002913-NH

On order of the Court, the application for leave to appeal the October 8, 2015 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

ZAHRA, J. (*dissenting*).

I respectfully dissent from the Court's order denying the application for leave to appeal. I would peremptorily reverse, in part, the judgment of the Court of Appeals and reinstate the trial court's order granting summary disposition in favor of defendants, for the reasons stated in Court of Appeals Judge JANSEN's partial dissent. The testimony of plaintiff's expert witnesses on the secondary theory of causation—that Sandra Peetz might well have survived if the CT scan had been performed sooner—was unsupported by evidence and necessarily based on conjecture. Simply put, the jury cannot be permitted to speculate whether plaintiff's decedent would have survived had a CT scan been performed sooner than it actually was performed.

A plaintiff in a medical malpractice action must establish "(1) the applicable standard of care, (2) breach of that standard of care by the defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury."[1] MCL 600.2912a(2) specifically provides that a plaintiff in a medical malpractice action "cannot recover for loss of an opportunity to survive or an opportunity to achieve a better result unless the

_____

[1] *Locke v Pachtman*, 446 Mich 216, 222 (1994). See also MCL 600.2912a(1).

opportunity was greater than 50%."[2]  Expert testimony is generally required to establish the standard of care, a breach of the standard of care, and causation in medical malpractice cases.[3]  An "expert opinion based upon only hypothetical situations is not enough to demonstrate a legitimate causal connection between a defect and injury."[4]

On December 7, 2007, defendant Dr. Sachinder S. Hans, a vascular surgeon, performed a carotid endarterectomy[5] on Sandra Peetz.  The procedure was completed and Peetz was in recovery by 11:00 a.m.  Around 12:15 p.m., Hans assessed Peetz's condition and noted neurological deficits consistent with a stroke.  Soon thereafter, Hans performed a second, emergency surgery to determine the cause of Peetz's symptoms.  Hans did not discover indicia of a stroke during the surgery, but inserted a stent as a precaution, and the surgery was completed around 3:45 p.m.  After seeing no improvement in Peetz's neurological condition, Hans ordered a CT scan at approximately 5:00 p.m.  Peetz was taken in for the scan around 6:15 p.m.  The scan revealed a chronic subdural hematoma with acute hemorrhage and subarachnoid bleeding.  Shortly after, Peetz was placed on life support.[6]  As the hematoma had expanded, Peetz's brain was compressed and shifted, and as a result her brainstem was herniated.

The testimony of plaintiff's experts failed to establish that Hans caused Peetz's death when he did not order a CT scan immediately after the second surgery.  The experts offered conflicting opinions regarding when Hans should have ordered a CT scan.  Dr. M. Wayne Flye testified that Hans's decision to perform a second surgery instead of ordering a CT scan after the first surgery was appropriate.  While Flye testified that the CT scan should have been done sooner after the second surgery, however, he was unable to provide a specific time at which Peetz's condition could have been reversed, stating, "It's hard to tell. . . .  I can't really tell you, no."  He nonetheless concluded that minutes could have affected the result.  Dr. Donald C. Austin testified that the CT scan should have been completed after the first surgery, but further stated that Peetz would have

---

[2] MCL 600.2912a(2) also requires a plaintiff alleging medical malpractice to prove that "he or she suffered an injury that *more probably than not* was proximately caused by the negligence of the defendant or defendants."  (Emphasis added.)

[3] *Woodard v Custer*, 473 Mich 1, 6 (2005); *Teal v Prasad*, 283 Mich App 384, 394-395 (2009).

[4] *Skinner v Square D Co*, 445 Mich 153, 173 (1994); see also *Craig v Oakwood Hosp*, 471 Mich 67, 87 (2004) ("[A] plaintiff cannot satisfy this [causation] burden by showing only that the defendant *may* have caused his injuries. Our case law requires more than a mere possibility or a plausible explanation.").

[5] Carotid endarterectomy is a procedure to remove a buildup of plaque from the carotid artery walls.

[6] Peetz died the following day when life support was removed.

survived had the CT scan been done immediately after the second surgery. Significantly, neither expert provided objective medical evidence, such as peer-reviewed published literature of other objective medical data, to support his conclusion.[7] Absent that evidence, the jury would have been left to speculate whether Peetz would have survived had a CT scan been performed sooner.[8]

The testimony of plaintiff's experts also failed to establish that there was a 50% or greater chance of an opportunity to survive or achieve a better result, as required by MCL 600.2912a(2), had Hans ordered the CT scan immediately after the second surgery. Flye testified equivocally when asked if Peetz more likely than not would have survived if the CT scan had been done right after the second surgery,[9] and he provided no factual or medical basis for his opinion. Austin testified equivocally when asked during what time Peetz's condition could have been reversed or she could have been saved. Significantly, medical literature before the trial court stated that intracerebral hemorrhages following carotid endarterectomies, like that sustained by Peetz, are extremely rare and almost always fatal. Therefore, plaintiff failed to overcome the MCL 600.2912a(2) bar to recovery when the opportunity to survive was 50% or less.

---

[7] While peer-reviewed, published literature is not always necessary to meet the requirements of MRE 702, in this case the lack of supporting literature, along with the lack of any other form of support for these expert opinions, renders the testimony inadmissible under MRE 702. See *Edry v Adelman*, 486 Mich 634, 641 (2010).

[8] *Locke*, 446 Mich at 229 ("[T]he jury should not be left to speculate in this regard. It is precisely to avoid such speculation that expert testimony is ordinarily required."); *Skinner*, 445 Mich at 166 (" 'There must be more than a mere possibility that unreasonable conduct of the defendant caused the injury. We cannot permit the jury to guess . . . .' ") (citation omitted).

[9] Flye answered:

> Well, it depends upon when you do it. If you did it 20 minutes before the CT scan was reported, it's hard to say, but within a reasonable -- you can get a CT scan from the operating room in 45 minutes. I would think that in that setting more than likely the patient would have been salvaged.

The speculative testimony and unsupported, conclusory opinions offered by plaintiff's experts in regards to the timing of the CT scan failed to sufficiently establish proximate causation. Defendants were therefore entitled to summary disposition.[10] Accordingly, I respectfully dissent and would reverse the judgment of the Court of Appeals in regards to the CT scan theory of causation.

MARKMAN, J., joins the statement of ZAHRA, J.

---

[10] See *Wischmeyer v Schanz*, 449 Mich 469, 484 (1995) (stating that failure to prove any one of the elements of a medical malpractice claim is fatal).



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 29, 2016



Clerk

t0726