*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUSAN SAWYER and RAY SAWYER,

      Plaintiffs-Appellees,

v

M. MIKAEL GETACHEW, M.D.,

      Defendant-Appellant,

and

WALLACE BROADBENT, D.O., and
KALAMAZOO EMERGENCY ASSOCIATES, PC,

      Defendants,

and

ELLA E.M. BROWN CHARITABLE CIRCLE,
doing business as OAKLAWN HOSPITAL,

      Defendant-Appellee.

UNPUBLISHED
March 21, 2025
9:38 AM

No. 369342
Calhoun Circuit Court
LC No. 2021-003091-NH

Before: CAMERON, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Plaintiff Susan Sawyer[1] injured her right ankle when she fell from a ladder. She went to the hospital, where defendant radiologist Dr. M. Mikael Getachew, M.D., determined that she did not suffer an "acute displaced" fracture as a result of her fall. Sawyer injured her right foot a second time days later and required surgery to repair a displaced fracture of a bone in her right

---

[1] Because plaintiff Ray Sawyer's claims are merely derivative of Susan Sawyer's claims, for ease of reference, we will refer only to Susan Sawyer as "Sawyer" throughout this opinion.

ankle. She filed this action, alleging that Dr. Getachew's failure to diagnose her with a nondisplaced fracture after she fell from the ladder resulted in her requiring surgery, or more complex surgery, than she otherwise would have required. Dr. Getachew moved for partial summary disposition on the basis that Sawyer failed to present expert testimony to establish her theory of causation. He appeals by leave granted[2] the trial court's order denying his motion. Because Sawyer failed to establish a prima facie medical-malpractice claim by presenting evidence supporting her theory of causation, we reverse the trial court's order.

## I. FACTUAL BACKGROUND

This medical-malpractice action stems from Sawyer's fall from a ladder on May 11, 2019. She fell approximately six feet to the ground and landed on the heel of her right foot. She felt a bone shift in her foot and went to Oaklawn Hospital, where hospital staff x-rayed her foot. Dr. Getachew interpreted the x-ray images and determined that Sawyer did not suffer an acute displaced fracture. The attending physician diagnosed Sawyer with an ankle sprain and told her that she would be able to walk on her right foot in a couple of days.

Sawyer purchased a hands-free walking crutch to assist her with mobility. While using the crutch, she lost her balance and hopped on the crutch and her left foot to regain her balance. As she hopped, her right foot made a loud cracking noise, although it did not come in contact with anything. The following day, she treated with Dr. Phillip Dabrowski, an orthopedist. Dr. Dabrowski ordered additional x-rays of Sawyer's right foot and determined that the talus[3] bone of her ankle was fractured and required surgery. Dr. Robert Gorman performed the surgery, implanting a metal plate and pins in Sawyer's right ankle.

Sawyer filed this action against Dr. Getachew,[4] alleging that he misinterpreted the x-rays taken on the day that she fell from the ladder and failed to diagnose her with a nondisplaced fracture of her right ankle. She asserted that if he had properly diagnosed her ankle fracture, hospital staff would have directed her not to put any weight on her right foot, she would not have used the hands-free walking crutch, and she would not have aggravated her injury. She further alleged that if she had not aggravated her injury, she either would not have required surgery or she would have required less-extensive surgery than the surgery that Dr. Gorman performed.

Dr. Getachew moved for partial summary disposition under MCR 2.116(C)(10), arguing that Sawyer had no causation expert who could testify that his alleged failure to diagnose her fracture resulted in her requiring more extensive treatment than she otherwise would have required.

---

[2] *Susan Sawyer v M Mikael Getachew MD*, unpublished order of the Court of Appeals, entered June 18, 2024 (Docket No. 369342).

[3] The "talus bone, also called the astragalus bone, is a saddle-shaped bone in your ankle." WebMD, Talus Bone: What to Know <https://www.webmd.com/a-to-z-guides/talus-bone-what-to-know> (accessed February 28, 2025).

[4] Although Sawyer alleged two claims, only Sawyer's claim against Dr. Getachew is at issue in this appeal.

He further argued that without a causation expert, Sawyer was unable to establish the causation element of a prima facie medical-malpractice claim.

In response, Sawyer asserted that Dr. Gorman was her causation expert. She maintained that Dr. Gorman had told her through the online messaging system "MyChart" that her first x-ray showed a nondisplaced fracture and that truly nondisplaced fractures may be treated nonsurgically. Sawyer argued that because Dr. Getachew failed to diagnose the fracture, it went untreated and became displaced, which required surgical intervention. She further argued that, according to Dr. Gorman, even if surgery had been necessary to repair the nondisplaced fracture, the surgery would have been less complex than the surgery that she underwent to repair the displaced fracture.

Dr. Getachew opposed Sawyer's reliance on the MyChart message. He maintained that the message constituted inadmissible hearsay and that a party could not rely on hearsay to overcome a motion under MCR 2.116(C)(10). He also argued that, even if the message could be considered, Dr. Gorman did not express a definitive opinion regarding causation.

The trial court denied the motion on the basis that whether Dr. Getachew's alleged failure to diagnose the nondisplaced fracture caused Sawyer to undergo more extensive treatment was a question of fact for the jury to determine.

## II. STANDARD OF REVIEW

We review de novo a trial court's decision on a motion for summary disposition. *Shinn v Mich Assigned Claims Facility*, 314 Mich App 765, 768; 887 NW2d 635 (2016). A motion under MCR 2.116(C)(10) tests the factual support of the plaintiff's complaint. *Anderson v Transdev Servs, Inc*, 341 Mich App 501, 506; 991 NW2d 230 (2022). In reviewing a motion under subrule (C)(10), we consider the pleadings, affidavits, depositions and other documentary evidence in the light most favorable to the nonmoving party. *Id.* at 506-507. The party opposing the motion may not rest upon mere allegations or denials, but rather, must provide documentary evidence setting forth specific facts that establish a genuine issue for trial. *Id*. at 506. Summary disposition is appropriate if the opposing party fails to do so and the moving party is entitled to judgment as a matter of law. *Shinn*, 314 Mich App at 768. "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Anderson*, 341 Mich App at 507 (quotation marks and citation omitted).

## III. ANALYSIS

Dr. Getachew argues that Sawyer is unable to present causation testimony and that expert testimony regarding causation is necessary to establish her medical-malpractice claim. To prove medical malpractice, a plaintiff must demonstrate: "(1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Teal v Prasad*, 283 Mich App 384, 391; 772 NW2d 57 (2009) (quotation marks and citations omitted). The plaintiff's failure to establish any of the four elements is fatal to a medical-malpractice action. *Benigni v Alsawah*, 343 Mich App 200, 213; 996 NW2d 821 (2022). Regarding the proximate-cause element, our Legislature has stated, "the plaintiff has the burden

of proving that he or she suffered an injury that more probably than not was proximately caused by the negligence of the defendant or defendants." MCL 600.2912a(2).

" 'Proximate cause' is a legal term of art that incorporates both cause in fact and legal (or 'proximate') cause." *Craig v Oakwood Hosp*, 471 Mich 67, 86; 684 NW2d 296 (2004). The cause in fact of an injury requires showing that the injury would not have occurred but for the defendant's conduct. *Id*. at 86-87. Proximate cause, on the other hand, "involves examining the foreseeability of consequences, and whether a defendant should be held legally responsible for such consequences." *Id*. at 87, quoting *Skinner v Square D Co*, 445 Mich 153, 163; 516 NW2d 475 (1994). An injury may have more than one proximate cause. *Benigni*, 343 Mich App at 214.

In a medical-malpractice case, "[e]xpert testimony is essential to establish a causal link between the alleged negligence and the alleged injury." *Pennington v Longabaugh*, 271 Mich App 101, 104; 719 NW2d 616 (2006). An expert's opinion based only on hypothetical situations, however, is insufficient to demonstrate a causal connection. *Teal*, 283 Mich App at 394. Rather, the facts on which an expert's opinion is based must be in evidence, and they must "support a reasonable inference of a logical sequence of cause and effect." *Id*. at 394-395 (quotation marks and citation omitted). Although the evidence need not negate all other possible causes of an injury, the causation evidence "must exclude other reasonable hypotheses with a fair amount of certainty." *Id*. at 395 (quotation marks and citation omitted).

Dr. Getachew argues that Dr. Gorman's MyChart message could not be considered in deciding his motion for partial summary disposition because it constitutes inadmissible hearsay. He relies on MCR 2.116(G)(6), which states:

> Affidavits, depositions, admissions, and documentary evidence offered in support of or in opposition to a motion based on subrule (C)(1)-(7) or (10) shall only be considered to the extent that the content or substance would be admissible as evidence to establish or deny the grounds stated in the motion.

We have recognized that although evidence submitted in support of or in opposition to a motion for summary disposition under MCR 2.116(C)(10) must be substantively admissible, the evidence does not have to be in admissible form. *Barnard Mfg Co, Inc v Gates Performance Engineering, Inc*, 285 Mich App 362, 373; 775 NW2d 618 (2009). In *Shelton v Auto-Owners Ins Co*, 318 Mich App 648, 658 n 8; 899 NW2d 744 (2017), this Court stated that an investigator's surveillance reports should not have been considered in deciding a motion under MCR 2.116(C)(10) because the reports constituted hearsay and the author of the reports did not testify or provide an affidavit indicating that the statements in the reports were true and that he would testify accordingly at trial.

Similarly, in the instant case, Dr. Gorman's MyChart message constitutes hearsay and he did not provide an affidavit averring that his statements were true and that he would testify in accordance with the statements at trial. However, even assuming that the MyChart message may properly be considered, the trial court erred by denying Dr. Getachew's motion because Dr. Gorman's statements are insufficient to create a genuine issue of material fact regarding causation.

The MyChart message stated, in relevant part, as follows:

I received your message sent via MyChart. . . . At your request, I have reviewed the imaging in question. I will do my best to address your question(s) here.

First, may I say that I am hesitant to give a "definitive" read of an xray that I am viewing outside of a designated imaging system viewer (or a designated disc of the original images). What I can see of the images you submitted (reportedly the originals from May 11, 2019) gives me a general idea, but the images are somewhat pixilated and do not give me the clarity that I would typically desire/require. All that said, it does appear that a fracture line is visualized in the talus body/neck region. The fracture is not appreciably displaced. Image 2/3 (as submitted in the medical record) best demonstrates the apparent fracture.

The plain films (xrays) from Dr. Dabrowski's office dated May 19, 2019 definitively demonstrate a displaced fracture through the talus body. This appears to be a change compared to the May 11 films.

As a general rule, with talus fractures (like yours) that are displaced, we treat them with surgery. There are cases where a truly non-displaced fracture may be treated non-surgically (e.g. with a cast and nonweightbearing). Typically we obtain a CT scan to better evaluate the fracture and determine if it is truly non-displaced (xrays typically do not provide enough information to make that call). Note that such cases (that can be treated without surgery) are the exception and not the norm. So it is possible that, if your fracture was truly non-displaced, it could have been treated without surgery. It can also be argued that, had your fracture not displaced to the degree that was noted on those xrays from May 19, but still required surgery, that surgery to repair it would have been less complex.

Dr. Gorman's message indicates that, assuming the actual x-ray images show what the pixilated images appeared to show, it is *possible* that Sawyer may not have needed surgery if her fracture was truly nondisplaced, which could have been determined only if a CT had been performed. Because a CT was not performed on May 11, 2019, it is unknown whether Sawyer's fracture was truly nondisplaced. Dr. Gorman noted, however, that nondisplaced fractures that can be treated nonsurgically are the exception to the norm. He also stated that it could *be argued* that Sawyer's surgery would have been less complex if her fracture had not become displaced to the degree that it did. Dr. Gorman did not offer a definitive opinion that Sawyer's surgery would have been less complex absent the exacerbation of the fracture. Instead, he spoke of mere possibilities rather than probabilities.

It is insufficient for a plaintiff to show a reasonable likelihood of a possibility rather than a probability that the defendant's conduct caused the plaintiff's injuries. *Benigni*, 343 Mich App at 213-214. In other words, "case law requires more than a mere possibility or a plausible explanation." *Craig*, 471 Mich at 87. "[T]he plaintiff must present substantial evidence from which a jury may conclude that more likely than not, but for the defendant's conduct, the plaintiff's injuries would not have occurred." *Skinner*, 445 Mich at 164-165. Because Dr. Gorman did not express a likelihood that Dr. Getachew's failure to diagnose Sawyer's nondisplaced fracture resulted in her requiring surgery or requiring more complex surgery, the MyChart message was insufficient to establish causation. Further, because Sawyer failed to present any evidence

supporting her theory of causation, she could not establish that element of her medical-malpractice claim, and Dr. Getachew was entitled to summary disposition. Although, as the trial court recognized, causation is generally a question of fact for the jury to resolve, *Holton v A+ Ins Assoc, Inc*, 255 Mich App 318, 326; 661 NW2d 248 (2003), the trial court erred by denying Dr. Getachew's motion despite Sawyer's failure to establish that element of a prima facie medical-malpractice claim.

## IV. CONCLUSION

Sawyer failed to oppose Dr. Getachew's motion for partial summary disposition with evidence that supported her theory of causation. To the extent that Dr. Gorman's opinions expressed in the MyChart message may be considered in deciding a motion under MCR 2.116(C)(10), Dr. Gorman failed to indicate anything other than the mere possibility that the alleged malpractice resulted in Sawyer requiring more extensive treatment than she would have otherwise. A mere possibility of causation is insufficient to establish a prima facie medical-malpractice claim. Accordingly, we reverse the trial court's order denying Dr. Getachew's motion for partial summary disposition.

Reversed.

/s/ Thomas C. Cameron
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

-6-