*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

AH MINOR by Next Friend CRYSTAL HAYNES
and CRYSTAL HAYNES Individually,

        Plaintiffs-Appellees,

v

MERCY HEALTH PARTNERS, SARAH
HELLMAN, D.O., DAVID A. CREE, M.D.,
DANIELLE R. SNYDER, D.O., and AUSTIN
FINKLE, D.O., also known as AUSTIN FINKLEA,
D.O.,

        Defendants-Appellants,

and

JENNIFER MARY SCHILES, D.O., and MICHAEL
D. ENGEL, D.O.,

        Defendants.

UNPUBLISHED
May 12, 2025
2:11 PM

No. 364939
Muskegon Circuit Court
LC No. 2019-000104-NH

AH MINOR by Next Friend CRYSTAL HAYNES
and CRYSTAL HAYNES Individually,

        Plaintiffs-Appellees,

v

MERCY HEALTH PARTNERS, DR. SARAH
HOLZGEN, DR. GUSTAV BARKETT, DR.
MEREDITH MANN, DR. KRISTEN SJOSTRAND,
DR. WINTER DOWLAND, and ELIZABETH
MEACHAM, F.N.P.,

        Defendants-Appellants,
and

No. 364940
Muskegon Circuit Court
LC No. 2020-001970-NH

DR. EMILY ZOULEK,

    Defendant.
_____

Before: GADOLA, C.J., and WALLACE and ACKERMAN, JJ.

WALLACE, J. (*dissenting*).

I respectfully dissent. Defendants moved for summary disposition, pursuant to MCR 2.116(C)(10), arguing that testimony from plaintiffs' causation and standard-of-care experts was not admissible because it did not meet the reliability requirements of MRE 702 and MCL 600.2955.[1] In other words, because those opinions were not admissible, summary disposition was required because plaintiffs' evidence did not create questions of fact on the issues of standard of care or causation, i.e., elements necessary for proving allegations of medical malpractice.[2]

In its opinion denying defendants' motions, the trial court analyzed the evidence submitted by plaintiffs, including various academic articles supporting plaintiffs' experts' testimony, and found that the opinions were consistent with generally accepted standards for applying and interpreting the subject methodologies and that they were generally accepted by the prenatal-healthcare community. In doing so, the court noted that its role was to filter out evidence that was unreliable. Because the court found that the standard of care and causation evidence was sufficiently reliable, i.e., it is admissible at trial, it correctly held that questions of fact exist for the jury to decide, which is what the court was required to hold under MCR 2.116(C)(10). Because the trial court's holding was supported by the evidence submitted by plaintiffs, I would hold that the trial court did not err when it held that the evidence was reliable pursuant to MRE 702 and MCL 600.2955, and that defendants were not entitled to summary disposition as a result.

The Michigan Supreme Court recently considered the issue concerning the reliability of expert testimony in *Danhoff v Fahim*, 513 Mich 427, 432; 15 NW3d 262 (2024). In that case, the plaintiff filed a medical malpractice suit against the defendants alleging that the defendants perforated the plaintiff's sigmoid colon during a procedure. *Id*. at 435. The plaintiff presented the testimony of expert Dr. Christopher Koebbe, who testified that "the particular injury sustained by plaintiff was an extremely rare complication that was more likely than not caused by a surgical instrument perforating the colon, an area far enough away from the operative region so as to constitute a breach in the standard of care." *Id*. at 438. The trial court granted summary disposition

_____

[1] As the majority notes, defendant also alleged that dismissal was required pursuant to MCR 2.116(C)(8) (failure to state a claim) but the trial court found that the allegations of the complaint were sufficient.

[2] In an action alleging medical malpractice, the plaintiff must prove the applicable standard of care, breach of that standard by defendant, injury, and proximate causation between the alleged breach and the injury. *Teal v Prasad*, 283 Mich App 384, 391; 772 NW2d 57 (2009) (citations omitted).

in favor of the defendants, concluding that Dr. Koebbe's opinion was unreliable because he did not rely on "any published medical journals for his opinion nor did he cite to any authority to support his conclusion that the procedure was performed incorrectly, resulting in the perforation." *Id*. at 438-439.

This Court had affirmed the trial court's grant of summary disposition. *Danhoff v Fahim*, unpublished per curiam opinion of the Court of Appeals, issued May 6, 2021 (Docket No. 352648). The Supreme Court reversed. *Danhoff*, 513 Mich at 433. The Court held that "the test for whether an expert is qualified is found in MRE 702, MCL 600.2955, and MCL 600.2169." *Id*. at 452. The Court emphasized that "[n]either MRE 702 nor MCL 600.2955 requires a trial court to exclude expert testimony of a plaintiff's expert on the basis of the plaintiff's failure to support their expert's claims with published literature." *Id*. The Court went on to explain that, "[a]lthough published literature may be an important factor in determining reliability, it is not a dispositive factor, the absence of which results in a finding that the proposed expert's testimony is unreliable and thus, inadmissible." *Id*. at 453. The Supreme Court concluded that the trial court and this Court "erred by focusing so strictly on plaintiff's inability to support Dr. Koebbe's opinions with published literature." *Id*. at 454. The Supreme Court remanded the case to the trial court to determine whether Dr. Koebbe's opinions were reliable under MRE 702, MCL 600.2955, and MCL 600.2169. *Id*. at 456.

In this case, defendants do not challenge the qualifications of plaintiffs' experts. In addition, defendants do not appear to dispute that vaginal ultrasounds are a reliable method to measure the cervix during pregnancy, that a shortened cervix is associated with an increased risk of preterm birth, that progesterone may be used to prolong a pregnancy of a women with a shortened cervix, or that preterm birth can cause complications for the infant. Rather, defendants argue that there was no reliable scientific basis to conclude that the standard of care in 2011 required vaginal ultrasounds in the circumstances present in this case and that there is no scientific basis to determine the length of Crystal Haynes's cervix from a subsequent measurement. Moreover, defendants assert that there is no scientific basis to conclude that the standard of care in 2011 required vaginal progesterone, and that there is no basis to opine that providing vaginal progesterone would have delayed or prevented AH's preterm birth.

Defendants argue that the applicable standard of care is demonstrated by the American College of Obstetricians and Gynecologists (ACOG) committee opinion, which was released in October 2008. The opinion provides that "[r]ecent studies support the hypothesis that progesterone supplementation reduced preterm birth in a select group of women. Despite the apparent benefits of progesterone, the ideal progesterone formulation is unknown." The opinion concludes in its abstract that, on the basis of current knowledge, "It is important to offer progesterone for pregnancy prolongation to only women with a documented history of a previous spontaneous birth at less than 37 weeks of gestation." Because Crystal did not have a previous preterm birth, defendants argue that she was not a candidate for serial measurement of cervical length or a candidate for vaginal progesterone therapy.

However, plaintiffs dispute that the ACOG committee opinion establishes the standard of care. Indeed, the opinion specifically states: "This document reflects the emerging clinical and scientific advances as of the date issued and is subject to change. The information should not be construed as dictating an exclusive course of treatment or procedure to be followed." In any event,

Crystal had a shortened cervix during her 2008 pregnancy. She was put on pelvic rest at 30 weeks' gestation and delivered at 38 weeks' gestation. Although defendants argue that Crystal had no history of preterm birth, there is evidence to indicate that preterm birth was avoided in her previous pregnancy as the result of medical intervention—the rest. Moreover, Crystal also had a D & C procedure following a miscarriage. One of plaintiffs' standard-of-care experts testified in his deposition that a D & C increases the risk of preterm birth in subsequent pregnancies. This opinion was supported by documentation provided by the parties. Crystal also complained of pelvic pressure during her appointment on July 18, 2011, which plaintiffs' experts opined could be a sign of shortening of the cervix. As a result, considering the evidence presented by the parties, there was a scientific basis to support plaintiffs' experts' opinions that Crystal was at risk for a preterm birth as the result of a shortening cervix and that transvaginal ultrasounds were the best way to determine cervical length.

Defendants contend that there was no way to determine the length of Crystal's cervix before her first transvaginal ultrasound on August 7, 2011, which showed a length of 2 to 2.2 centimeters. The parties agree that a shortened cervix is less than 2.5 centimeters. From the documentation and testimonies provided by the parties, determining the rate at which a cervix shortens during pregnancy is not exact. However, because Crystal's cervix was 2 to 2.2 centimeters on August 7, 2011, and 1.9 to 2.3 centimeters on August 11, 2011, it is not impossible that it was less than 2.5 centimeters on July 18, 2011, when she complained of pelvic pressure at 23 weeks' gestation.

The actual effectiveness of progesterone to prolong the pregnancy of a woman with a shortened cervix appears to be the subject of debate. Dr. Dwight Rouse's deposition testimony indicated that it was more effective for women who exhibit a shortened cervix earlier in pregnancy, such as women with a cervix measuring less than 2 centimeters in length at or before 24 weeks' gestation, which would not include Crystal. In any event, as Dr. Rouse admitted, there is no study that is specific to the circumstances in this case, i.e., showing the effectiveness of vaginal progesterone in a patient who had a D & C following a miscarriage, a previous pregnancy with a shortened cervix in which she was placed on pelvic rest and delivered at 38 weeks' gestation, and has a shortened cervix during a current pregnancy at 26 weeks' gestation. Although plaintiffs may not ultimately persuade the trier of fact that they should prevail on their medical malpractice case, the trial court did not err by denying defendants' motions for summary disposition on the basis that the opinions of plaintiffs' experts were not reliable because those opinions were not supported by scientific evidence. See *id*. at 455-456.

Because the trial court properly found that the contested expert opinion evidence met the reliability requirements of MCR 702 and MCL 600.2955, meaning it is admissible at trial, and because that evidence creates questions of fact on the issues of standard of care and causation, I would affirm the trial court's opinion and order denying defendants' motions for summary disposition.

/s/ Randy J. Wallace