*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CHRISTOPHER WEIR and DENISE WEIR,

      Plaintiffs-Appellants,

v

MCLAREN PORT HURON, PHYSICIAN
HEALTHCARE NETWORK, PC, and DR. KAREN
MCFARLANE,

      Defendants-Appellees.

UNPUBLISHED
August 11, 2022

No. 357334
St. Clair Circuit Court
LC No. 20-000007-NH

Before: RIORDAN, P.J., and BORRELLO and LETICA, JJ.

PER CURIAM.

Plaintiffs appeal as of right the opinion and order granting summary disposition in favor of defendants, McLaren Port Huron (McLaren), Physician Healthcare Network PC (PHN), and Dr. Karen McFarlane (defendant). We affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

Plaintiffs filed this action alleging medical malpractice was committed when defendant performed a laparoscopic cholecystectomy (LC) or gallbladder surgery on plaintiff but allegedly clipped the common bile duct.[1] Specifically, plaintiff asserted that defendant performed his appendectomy on June 6, 2017, and he remained hospitalized through June 13, 2017. At his follow up appointment with defendant on June 22, 2017, plaintiff complained of pain, and imaging studies revealed a large gallstone. Defendant recommended an LC. After receiving clearance from plaintiff's pulmonologist, defendant performed the LC on July 10, 2017, but it was alleged that she negligently transected the common bile duct during the procedure. As a result of this injury,

---

[1] Because plaintiff Christopher Wier was the patient treated by surgeon defendant Dr. McFarlane and the claim of malpractice arises from this patient-physician relationship, the singular plaintiff refers to Christopher Wier and the singular defendant to Dr. McFarlane. McLaren is the hospital where the procedure was performed, and PHN is defendant's professional practice.

plaintiff was transferred to Henry Ford Hospital where another doctor constructed a repair procedure. Plaintiff, however, alleged that he continued to experience infection and pain purportedly because of defendant's alleged breach of the standard of care by transecting the common bile duct. With the complaint, plaintiffs submitted the affidavit of merit of Dr. Michael S. Drew.

Defendant and PHN moved for summary disposition under MCR 2.116(C)(10), contending that the opinion by plaintiffs' sole standard of care expert, Dr. Drew, was inadmissible.[2] Because the breach of the standard of care was not obvious to a layperson, defendants alleged that expert testimony was required. In his testimony, Dr. Drew opined that the clipping of the common bile duct during the LC by defendant constituted a breach of the standard of care. However, defendants asserted that this opinion was premised on Dr. Drew's own personal belief and did not reflect general acceptance in the medical community or find support in peer-reviewed literature. Additionally, the opinion was contrary to medical literature presented by defendants. Plaintiffs had the burden of demonstrating that the evidence was relevant and admissible. In *Elher v Misra*, 499 Mich 11; 878 NW2d 790 (2016), our Supreme Court addressed the identical standard of care opinion in the context of the performance of an LC and the clipping of the common bile duct and rejected it. Because Dr. Drew's standard of care opinion was inadmissible under MRE 702 and MCL 600.2955 and plaintiffs were left without expert testimony to support their medical malpractice action, defendants allegedly were entitled to summary disposition.[3] Alternatively, if the trial court needed additional information on the issue, defendants requested a *Daubert* hearing.[4]

Plaintiffs filed a response in opposition to the defense motion for summary disposition. Plaintiffs alleged that Dr. Drew testified that a surgeon had to perform three acts to safely remove a gallbladder: (1) clear the hepatocystic triangle (the entity formed by the cystic duct, the common hepatic duct, and the inferior edge of the liver) from the fat and fibrous tissue; (2) separate the lower portion of the gallbladder from the liver to expose the cystic plate; and (3) visualize the only two structures entering the gallbladder, the cystic duct and the cystic artery. If these acts were followed, Dr. Drew concluded that it was medically impossible for the surgeon to clip, cut, or otherwise injure any other structure, such as the common bile duct. Furthermore, Dr. Drew's opinion was purportedly supported by medical literature, specifically, the three acts to safely perform an LC were known as the critical view of safety (CVS) and were published in the Journal

---

[2] Defendant McLaren filed a pleading joining in the motion for summary disposition. Although McLaren merely joined in the motion, it attached the affidavits from doctors filed in the case of *Elher v Misra*, 499 Mich 11; 878 NW2d 790 (2016), which addressed the same issue.

[3] With the motion, defendants submitted Dr. Drew's deposition testimony, the article entitled *Causes and Prevention of Laparoscopic Bile Duct Injuries*, Annals of Surgery, Vol 237, No. 4, 460-469 by Dr. Lawrence W. Way, and an affidavit by defense expert Dr. John Webber, opining that Dr. Drew's opinion regarding the breach of the standard of care was not generally accepted by the board-certified general surgery community.

[4] *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993).

of the American College of Surgeons. Plaintiffs contended that two other articles supported Dr. Drew's position. Therefore, his expert opinion met the threshold requirements of MRE 702 and MCL 600.2955. Plaintiffs submitted that the *Elher* decision as cited by defendants was distinguishable, and the competing opinions offered by the defense medical experts presented questions of credibility and reliability for resolution by the trier of fact.[5]

Defendants filed a reply brief. It was asserted that plaintiffs misconstrued the testimony by Dr. Drew. Specifically, defendants alleged that Dr. Drew never testified that it was a breach of the standard of care to fail to employ the CVS during the LC. Additionally, the articles cited by plaintiffs merely explained the rationale for the CVS. When defense counsel questioned Dr. Drew about the article *Critical View of Safety, Why it is Not the Only Method of Ductal Identification with the Standard of Care in Laparoscopic Cholecystectomy* by Dr. Strasberg, Dr. Drew answered that he had not heard of it or read it. More importantly, in his deposition, Dr. Drew admitted that the infundibular approach used by defendant during plaintiff's surgery complied with the standard of care. Further, Dr. Drew acknowledged that use of the CVS procedure did not preclude transaction of the common bile duct. In fact, Dr. Drew transacted the common bile duct when he performed surgery using the CVS method. Defendants submitted that this case was indistinguishable from the *Elher* decision, and therefore, summary disposition was appropriate in defendants' favor.[6]

Following oral argument, the trial court issued its opinion and order granting summary disposition in favor of defendants. After summarizing the parties' arguments, the trial court stated:

> The facts of this case are very similar to *Elher*. The Michigan Supreme Court in *Elher* found that the circuit court did not abuse its discretion in excluding an expert's standard of care opinion when that opinion is based merely on the expert's background and experience and without supporting medical literature. This is especially true when the defense presents a peer-reviewed article which states the opposite of that expert's opinion. In *Elher* and in the current case, Defendants have put forward the peer-reviewed article by Dr. Way in which Dr. Way concluded after analyzing 252 operations, that 97% of the injuries in laparoscopic cholecystectomies occurred because of misperception and that such misperception errors do not constitute negligence. The plaintiff in *Elher* failed to provide any peer-reviewed medical literature that would contest the Dr. Way article. For Plaintiffs in this current case, the question becomes whether they have provided any supporting medical literature which corroborates Dr. Drew's opinion

---

[5] With the response, plaintiffs submitted medical articles entitled *Strategies for Minimizing Bile Duct Injuries – Adopting A Universal Culture of Safety in Cholecystectomy*; *Rationale and Use of the Critical View of Safety in Laparoscopic Cholecystectomy*; and *An Analysis of the Problem of Biliary Injury During Laparoscopic Cholecystectomy*; as well as Dr. Drew's deposition testimony; Dr. Drew's Affidavit of Merit; and defendant's deposition.

[6] Defendants also moved for summary disposition of the contention that defendant should have ordered a hepatobiliary iminodiacetic acid (HIDA) Scan, and the trial court granted the motion. The HIDA Scan ruling is not raised on appeal, and we do not address its merits.

that Dr. McFarlane's clipping of the common bile duct by failing to properly identify the common bile duct is a breach of the standard of care, if not, then the current case is exactly on point with *Elher*.

Dr. Drew is clear in his deposition that he believes the Critical View of Safety (CVS) method is the best and safest way to perform a laparoscopic cholecystectomy. He further stated that in his opinion, if the CVS had been utilized in this case, the injury to Plaintiff would not have occurred (Dr. Drew deposition at page 36). Dr. McFarlane used the infundibular approach. Dr. Drew admitted in his deposition (page 72) that it is within the standard of care to use the infundibular approach but if the infundibular approach is done correctly, this injury would not occur. At this point in his deposition, Dr. Drew stated that whenever there is a clipping of the common bile duct using the infundibular approach, it means it was done incorrectly (page 77). Dr. Drew was asked if there was any literature that supported this opinion and he stated that he was not aware of any (page 79).

This case is directly on point with *Elher*. Dr. Drew's opinion is almost exactly the same as Dr. Priebe's in *Elher*. Plaintiffs have the exact same issue as the plaintiffs in *Elher*, in that, there is no medical literature to support the opinion that it is always a breach of the standard of care to clip the common bile duct. Defendants in *Elher* and in the current case have provided peer-reviewed medical literature which states that it is not negligence to clip the common bile duct due to misperception.

Dr. Drew and Plaintiff have provided three articles which allegedly support his standard of care opinions and it is argued that these articles distinguish Plaintiff's case from *Elher*. The articles that Plaintiff has provided support the opinion of Dr. Drew that the CVS method is a safer way of performing this surgery and can decrease the chances of bile duct injuries. However, even if there is support for the CVS method being a safer way of performing this surgery, it does not mean that Dr. McFarlane breached the standard of care. Dr. Drew admitted that using the infundibular approach is within the standard of care. Dr. Drew provides no medical literature to support the opinion that it is a breach of the standard of care to clip the common bile duct due to misperception while using the infundibular approach. Defendants have provided the Dr. Way article which is peer-reviewed and used in *Elher* to support the opinion that it is not negligence to clip the common bile duct due to misperception.

Therefore, as in *Elher*, Dr. Drew's standard of care opinion that it is always a breach of the standard of care to clip the common bile duct in the performance of a laparoscopic cholecystectomy absent severe inflammation or tumor is inadmissible as that opinion is only based on Dr. Drew's own background and experience and is not supported by any peer-reviewed medical literature. Further, there is no evidence that this opinion is generally accepted within the relevant expert community. Dr. Drew's opinion that the CVS method is a safer way of performing this surgery is supported by medical literature but does not support the conclusion that Dr. McFarlane was negligent or breached the standard of care. The

infundibular approach used by Dr. McFarlane is within the standard of care and Defendants have provided peer-reviewed medical literature, which has not been rebutted or contradicted by Plaintiff, that clipping the common bile duct due to misperception is not negligence.

After concluding that the testimony of plaintiffs' sole standard of care expert was inadmissible, the trial court granted defendants' motion for summary disposition.

Plaintiffs moved for reconsideration, and the trial court issued an opinion and order denying reconsideration. The trial court first noted that it relied principally upon the *Elher* decision to grant defendants' motion, but the *Elher* decision was not even addressed in plaintiffs' motion for reconsideration. Therefore, the trial court concluded that plaintiffs failed to demonstrate a palpable error. Nonetheless, the trial court then stated:

> After oral argument on Defendant's [sic] Motion for Summary Disposition, Plaintiff submitted an affidavit by Dr. Drew that attempts to clarify what his standard of care opinion is. His carefully drafted attempt of clarification arguably conflicts with his deposition testimony. This affidavit highlights a portion of Dr. Drew's deposition testimony where he states "there are situations where you could injure a common duct where it wouldn't be a deviation, but putting your clip across it and misidentifying it is a deviation." However, in this affidavit Dr. Drew also states that "The misidentification occurred as Dr. McFarlane failed to obtain the critical view of safety . . . ." Therefore, this attempt by Plaintiff to characterize the standard of care opinion as "misidentifying the organs of the biliary tree" is just another way of stating that it was an error not to use the CVS method. The standard of care does not require the use of the CVS method as Dr. Drew himself stated.
>
> Plaintiff then attempts to argue that the reason that there is no scientific literature supporting the opinion that it is a breach of the standard of care to misidentify the structures of the biliary tree or use the CVS method is because the issue is so obvious that such an article would not be written. Plaintiff cites *Garcia v. West Shore Med. Ctr.*, 2015 Mich. App. LEXIS 1433 [7] as authority for his position that this court committed palpable error. However, *Elher*, a Michigan Supreme Court case that involves the same procedure, injury, and opinion is the controlling authority, not *Garcia*, an unpublished case involving a different medical procedure and opinion. In *Garcia*, the medical expert whose opinion was at issue gave a "case-specific causation theory" and the Court of Appeals found that because this theory was so narrow, specific, and dangerous to replicate, there is no way it could have been subject to scientific testing and replication. This is not the case with Dr. Drew's opinion. Defendants have put forward a peer-reviewed study by Dr. Way which contradicts Dr. Drew's opinion. Plaintiff has provided no literature which supports the relevant standard of care opinion in this case. This court is not weighing the credibility of the experts as Plaintiff suggests, but simply

---

[7] *Estate of Beverly Kay Garcia v West Shore Medical Ctr*, unpublished per curiam opinion of the Court of Appeals, issued July 21, 2015 (Docket No. 320781).

-5-

acknowledging that this contradictory study exists, as did the Michigan Supreme Court in *Elher*.

From these decisions, plaintiffs appeal.

## II. STANDARDS OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Houston v Mint Group, LLC*, 335 Mich App 545, 557; 968 NW2d 9 (2021). Summary disposition is appropriate pursuant to MCR 2.116(C)(10) where there is "no genuine issue as to any material fact, and the moving party is entitled to judgment or partial judgment as a matter of law." MCR 2.116(C)(10). When reviewing a motion for summary disposition challenged under MCR 2.116(C)(10), the court considers the affidavits, pleadings, depositions, admissions, and other admissible documentary evidence then filed in the action or submitted by the parties in the light most favorable to the nonmoving party. MCR 2.116(G)(4), (G)(5); *Buhl v City of Oak Park*, 507 Mich 236, 242; 968 NW2d 348 (2021).

The trial court's decision to admit evidence is reviewed for an abuse of discretion. *Sabbagh v Hamilton Psychological Servs, PLC*, 329 Mich App 324, 355; 941 NW2d 685 (2019). An abuse of discretion occurs when the trial court selects an outcome that falls outside the range of reasonable and principled outcomes. *Id*. at 355-356.

## III. ANALYSIS

Plaintiffs contend that the trial court erred by excluding the testimony of Dr. Drew and granting summary disposition in favor of defendants. We disagree.

"In a medical malpractice case, plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). For a claim of medical malpractice, expert testimony is required to establish the applicable standard of care and a breach of that standard. *Kalaj v Khan*, 295 Mich App 420, 429; 820 NW2d 223 (2012). Further, expert testimony is necessary to establish causation. *Teal v Prasad*, 283 Mich App 384, 394; 772 NW2d 57 (2009). An expert opinion cannot be premised on hypothetical situations to demonstrate a legitimate causal connection between a defect and an injury. *Id*. An expert must support his testimony with facts in evidence. *Id*. at 395.

MRE 702 addresses testimony by experts and provides:

If the court determines that scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise if (1) the testimony is based on sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

-6-

MCL 600.2955 also governs admission of scientific or expert opinion evidence and provides:

(1) In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is reliable and will assist the trier of fact. In making that determination, the court shall examine the opinion and the basis for the opinion, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and shall consider all of the following factors:

(a) Whether the opinion and its basis have been subjected to scientific testing and replication.

(b) Whether the opinion and its basis have been subjected to peer review publication.

(c) The existence and maintenance of generally accepted standards governing the application and interpretation of a methodology or technique and whether the opinion and its basis are consistent with those standards.

(d) The known or potential error rate of the opinion and its basis.

(e) The degree to which the opinion and its basis are generally accepted within the relevant expert community. As used in this subdivision, "relevant expert community" means individuals who are knowledgeable in the field of study and are gainfully employed applying that knowledge on the free market.

(f) Whether the basis for the opinion is reliable and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

(g) Whether the opinion or methodology is relied upon by experts outside of the context of litigation.

(2) A novel methodology or form of scientific evidence may be admitted into evidence only if its proponent establishes that it has achieved general scientific acceptance among impartial and disinterested experts in the field.

(3) In an action alleging medical malpractice, the provisions of this section are in addition to, and do not otherwise affect, the criteria for expert testimony provided in section 2169.[8]

---

[8] MCL 600.2169 addresses that the person providing expert testimony must be a licensed health professional, and if a specialty is involved, must be board-certified in the same specialty as the alleged tortfeasor. The parties do not challenge MCL 600.2169 in this appeal.

The proponent of evidence bears the burden of establishing the relevance and admissibility. *Gilbert v Daimler Chrysler Corp*, 470 Mich 749, 781; 685 NW2d 391 (2004). The court serves as the gatekeeper of the admission of evidence, and this role applies to all stages of expert analysis:

> MRE 702 mandates a searching inquiry, not just of the data underlying expert testimony, but also of the manner in which the expert interprets and extrapolates from those data. Thus, it is insufficient for the proponent of expert opinion merely to show that the opinion rests on data viewed as legitimate in the context of a particular area of expertise (such as medicine). The proponent must also show that any opinion based on those data expresses conclusions reached through reliable principles and methodology.
>
> Careful vetting of all aspects of expert testimony is especially important when an expert provides testimony about causation. [*Id*. at 782.]

In *Elher*, the plaintiff underwent an LC performed by the defendant, Dr. Dwijen Misra, Jr. Before the surgery, the defendant discussed the risks and the benefits of the surgery, and the plaintiff signed the consent form. The consent form specifically apprised the plaintiff of the risk of injury to the common bile duct. During the LC, the defendant inadvertently clipped the common bile duct that extended from the plaintiff's liver. Consequently, the plaintiff was required to undergo emergency surgery to repair the duct to allow bile to drain from the liver. The defendant attributed the clipping to the fact that the "view from the laparoscope is not optimal and not recognized as optimal and illusions can be created" that cause the common bile duct to be clipped. The defendant estimated that the complication occurred between .5 and 2% of all laparoscopic gallbladder surgeries. *Elher*, 499 Mich at 14-15.

The plaintiff filed a medical malpractice action alleging that the defendant breached the standard of care by clipping the common bile duct and offered the expert testimony of Dr. Paul Priebe in support. Dr. Priebe, a board-certified general surgeon and professor, opined that it was "malpractice to injure the common bile duct during a laparoscopic cholecystectomy, absent extensive inflammation or scarring." However, when pressed, Dr. Priebe could not provide any supporting authority for his position. Specifically, he could not proffer any colleague to support his position or medical literature. Consequently, the defendants moved for summary disposition, asserting that Dr. Priebe's opinion could not satisfy MRE 702 and MCL 600.2955 because the opinion was unreliable. The plaintiff asserted that expert testimony was not required because the negligence by the defendant was obvious to a layperson, and nonetheless, the opinion was reliable under MCL 600.2955. The trial court granted the motion, concluding that Dr. Priebe merely addressed his experience and background, but failed to show that his opinion and its basis was subjected to scientific testing and replication, peer-reviewed publications, and general acceptance in the relevant expert community. Dr. Priebe admitted that there was no authority to support his standard of care opinion, he was unaware if anyone agreed with his opinion, and he could not substantiate his opinion with medical literature. A majority of the Court of Appeals reversed the trial court. *Id*. at 17-19.

Our Supreme Court reversed the Court of Appeals' decision and reinstated the trial court's decision. After examining the evidentiary standard for admission, the Court noted that a lack of supporting medical literature was not controlling but was an important factor in determining the

admissibility of expert witness testimony. That is, it was generally insufficient to simply rely on an expert's experience and background to submit that the opinion was reliable and admissible. *Id*. at 23. The Court stated:

> At the outset, we reject plaintiff's contention that this is a case in which the breach of the standard of care is so obvious to a layperson that no expert testimony is required. Priebe himself conceded that some professionals believe that clipping the common bile duct, absent extensive scarring or inflammation, is not necessarily a breach of the standard of care. Accordingly, expert testimony was required to prove the applicable standard of care and a breach of that standard of care in this case.

> There is no doubt that Priebe, plaintiff's sole expert, regarding the standard of care, was qualified to testify as an expert based on his extensive experience. On the basis of this experience, he opined that, absent extensive scarring or inflammation, it is virtually always a breach of the standard of care to clip the common bile duct. In Priebe's opinion, because there was no evidence of scarring or inflammation, [the defendant] breached the standard of care in this case. The question is whether this opinion was sufficiently reliable under the principles articulated in MRE 702 and by the Legislature in MCL 600.2955.

> The Court of Appeals viewed this case as one in which the experts' opinions were outside the realm of scientific methodology and in which Priebe's opinion was reliable given his specialized experience and knowledge. The United States Supreme Court has recognized, as did the circuit court, that the *Daubert* factors may or may not be relevant in assessing reliability, depending on the nature of the issue, the expert's expertise, and the subject of the expert's testimony. And even though the United States Supreme Court has stated that, in some cases, "the relevant reliability concerns may focus upon personal knowledge or experience," the Court has also stated that even in those cases, the *Daubert* factors can be helpful, even if all of the factors may not necessarily apply in determining the reliability of scientific testimony. Accordingly, it bears repeating that it is within a trial court's discretion how to determine reliability.

> We conclude that the circuit court did not abuse its discretion by relying on two of the factors listed in MCL 600.2955 and by concluding that Priebe's opinion was not reliable. First, the Court of Appeals erred by concluding that the issue debated by the experts was not studied in peer-reviewed articles and, therefore, that the circuit court abused its discretion when it relied on this factor. The majority conceded that the article authored by Way was peer-reviewed. Way concluded, after analyzing 252 operations, that 97% of injuries occur because of misperception and that such misperception errors do not constitute negligence. Thus, the issue being debated has been studied. Plaintiff, however, failed to submit any peer-reviewed medical literature in support of Priebe's opinion, and Priebe admitted that he knew of none.

The circuit court also did not abuse its discretion by relying on the lack of evidence regarding the degree to which Priebe's opinion was generally accepted. The Court of Appeals majority misinterpreted this factor. The majority concluded that there was no widespread acceptance of any standard-of-care statement. But this factor requires the court to consider "[t]he *degree* to which the opinion and its basis are generally accepted within the relevant expert community." Priebe admitted that he knew of no one that shared his opinion. While the articles submitted by defendants may have suggested that "purists" in the field agreed with Priebe, there was still no indication regarding the degree of acceptance of his opinion. The majority conceded that there was no evidence regarding whether Priebe's view had general acceptance within the relevant expert community. This was a relevant factor for the circuit court to consider.

We do, however, agree with the Court of Appeals majority that all the factors in MCL 600.2955 may not be relevant in every case. Indeed, we agree with the majority that the scientific testimony and replication factor does not fit the type of opinion at issue in this case. Therefore, the circuit court abused its discretion by relying on this factor. But this does not render the circuit court's ultimate decision an abuse of discretion. Plaintiff merely pointed to Priebe's background and experience in regard to the remaining factors, which is generally not sufficient to argue that an expert's opinion is reliable. Priebe admitted that his opinion was based on his own beliefs, there was no medical literature supporting his opinion, and plaintiff failed to provide any other support for Priebe's opinion.

The circuit court also did not abuse its discretion by concluding that Priebe's testimony was deficient because it did not conform to MRE 702. We find this Court's decision in *Edry v Adelman* [486 Mich 634; 786 NW2d 567 (2010)] to be instructive. In *Edry*, this Court concluded that an expert failed to meet the requirements of MRE 702 because his opinion "was not based on reliable principles or methods;" his opinion was contradicted by the opinion of the defendant's expert and published literature on the subject that was admitted into evidence, which even he acknowledged as authoritative; and there was no literature supporting the testimony of plaintiff's expert admitted into evidence. As in *Edry*, Priebe's opinion "was not based on reliable principles or methods," his opinion was contradicted by the opinion of defendant's expert and published literature on the subject that was admitted into evidence, and there was no literature supporting the testimony of plaintiff's expert admitted into evidence. Plaintiff failed to provide any support for Priebe's opinion that would demonstrate that it had some basis in fact and that it was the result of reliable principles or methods. While peer-reviewed, published literature is not always necessary or sufficient to meet the requirements of MRE 702, the lack of supporting literature, combined with the lack of any other form of support, rendered Priebe's opinion unreliable and inadmissible under MRE 702 . . . .

We hold that the circuit court did not abuse its discretion by concluding that Priebe's background and experience were not sufficient to render his opinion reliable in this case when Priebe admitted that his opinion was based on his own

beliefs, there was no evidence that his opinion was generally accepted within the relevant expert community, there was no peer-reviewed medical literature supporting his opinion, plaintiff failed to provide any other support for Priebe's opinion, and defendants submitted contradictory peer-reviewed literature. As noted by the Court of Appeals dissent, the concern in relying on Priebe's personal opinion is that Priebe may have held himself to a higher, or different, standard than that practiced by the medical community at large. This is particularly true where, as here, there is contradictory medical literature. [*Elher*, 499 Mich at 24-28.]

In the present case, Dr. Drew acknowledged that when receiving consent from patients to perform an LC, they were apprised that damage to the common bile duct was a possible complication. When asked if it was a risk of the procedure, he answered, "I think it's a risk . . . . In my opinion, if it's damaged, it's because you did something wrong except in very special cases, but it's an inherent risk of the procedure, yes." Dr. Drew opined that a common bile duct injury could occur and still comply with the standard of care if there was a tumor or extremely inflamed gallbladder. However, those scenarios were distinct from placing a clip across the duct, clamping it, and cutting it. Thus, in his opinion, the clipping or transection of the common bile duct was always a breach of the standard of care, even if there was a shortened cystic duct. However, Dr. Drew would not be critical if there were two structures so close together they were "literally adherent to each other." In summary, any time a clipping or transection of the common bile duct occurred, Dr. Drew concluded it was a breach of the standard of care.

Dr. Drew knew that defendant testified about performing approximately 560 LC surgeries, this was her first bile duct injury, and he believed that she fell within the national average for percentage of injuries. Although Dr. Drew advocated for the performance of the CVS method in performing the LC surgery, he acknowledged that it was not the only approach that complied with the standard of care, but he opined that as the safest method, it should be the standard of care. Dr. Drew recognized that defendant performed the infundibular approach; this involved dividing the cystic duct and the cystic artery sequentially and mobilizing the gallbladder out of the liver bed. Nonetheless, even though the injury was rare, Dr. Drew opined that to avoid even this rare injury, the CVS procedure should have been used. When asked if the complication rate for common bile duct injury was solely caused by the failure to employ the CVS method, Dr. Drew answered, "They might be," and "There's no way of knowing that." Nonetheless, he opined with "100 percent" certainty that this injury could have been avoided if the CVS was performed. Dr. Drew had not spoken to colleagues to receive input regarding his review or opinion of the case.

Dr. Drew acknowledged an article addressing guidelines for LC surgery. However, he could not comment on the statistics and whether application of CVS had any bearing on the complication rate. Dr. Drew was familiar with two articles by Dr. Strasberg, a recognized authority in the field. The CVS method notes that, when there is inflammation or other difficulty, CVS or removal of the bottom of the gallbladder from the liver bed helps to avoid transection or dissection of the common bile duct. After discussing an article by Dr. Strasberg, Dr. Drew ultimately testified that the infundibular approach employed by defendant for plaintiff's surgery was within the standard of care. Nonetheless, Dr. Drew stated, "The infundibular approach was used and it caused a problem. It would have been avoided by the use of the CVS, and . . . I don't understand why that's not the standard of care." Moreover, Dr. Drew opined that defendant did not perform the infundibular approach correctly simply because there was an injury. However, Dr. Drew, although

insistent that the injury (a known complication or risk for LC) meant that the procedure was performed incorrectly and therefore breached the standard of care, could not identify any literature to support his point of view. Although Dr. Drew opined that the CVS method was the safest way to perform the LC, he acknowledged that he transected the common bile duct while using CVS and was sued for malpractice. Dr. Drew opined that he committed malpractice and settled the case because he breached the standard by injuring the bile duct. He acknowledged that there was a peer-reviewed study by Dr. Way that concluded visual perceptual illusion was the primary cause of error in LC cases, and misperception errors did not constitute negligence. Dr. Drew called the article controversial and was unaware that the article was deemed authoritative by the Michigan Supreme Court.

We recognize that Dr. Drew was an expert under MRE 702. In light of his years of practice as a surgeon, he had the requisite knowledge, skill, experience, training or education. However, to admit his opinion, Dr. Drew's testimony had to be premised on sufficient facts or data, the testimony had to be the product of reliable principles and methods, and he had to apply the principles and methods reliably to the facts of the case. MRE 702. Although an experienced surgeon, Dr. Drew opined that the safest method to perform the LC was to use the CVS method, because it was the safest method it should be the standard of care, and he was 100 percent certain that if defendant had employed the CVS method, plaintiff's injury would not have occurred. Despite Dr. Drew's citation to articles that discussed the CVS method, these articles did not identify the CVS method as the sole standard of care. There was no definitive determination that CVS was the safest method, the medical literature failed to indicate that the safest method was the standard of care, and there was no determination that another methodology could not also deemed to be within the standard of care. Accordingly, Dr. Drew's opinion did not demonstrate that it was the product of reliable principles and methods. MRE 702. Rather, Dr. Drew acknowledged that he could point to no scientific literature to support his position, and it was apparent that he offered his personal opinion that the transection of the common bile duct would not have occurred unless there was a breach of the standard of care. Finally, Dr. Drew opined that he was 100 percent certain that if defendant had employed the CVS method, a transaction of the common bile duct would not have occurred. Yet, Dr. Drew's testimony on this point is belied by his acknowledgment that he performed an LC with the CVS method and clipped a common bile duct. Dr. Drew was sued for medical malpractice and settled the case. Thus, Dr. Drew's testimony that the CVS method is the safest and essentially foolproof way to perform an LC is not mirrored in the peer-reviewed articles and belied by his experience in applying the methodology. Furthermore, when asked to peruse the articles by Dr. Strasberg, Dr. Drew was forced to acknowledge that the literature reflected that the infundibular approach employed by defendant fell within the standard of care.

Moreover, Dr. Lawrence Way was the lead author of *Causes and Prevention of Laparoscopic Bile Duct Injuries* as published in the Annals of Surgery, Vol. 237, No. 4, 460-469. This article was cited as authority in the *Elher* decision. Dr. Way's article did not conclude that bile duct injuries were the product of negligence. Rather, the article noted that training and anatomical structures created a misperception for surgeons.

In light of Dr. Drew's testimony and medical articles, plaintiffs failed to establish that Dr. Drew's testimony comported with MRE 702. Although Dr. Drew was a surgeon with years of experience, his opinions did not appear to be recognized by the scientific community and reflected

-12-

his own personal belief that if a common bile duct injury occurred, in the absence of a tumor or inflammation, it was the product of the breach of a standard of care and the failure to employ the CVS method.

With regard to the application of MCL 600.2955, consistent with the *Elher* Court, plaintiffs failed to demonstrate that Dr. Drew's opinion was subjected to peer-reviewed literature and accepted within the medical community. Plaintiffs submit that the *Elher* decision is distinguishable because there was a complete lack of citation to medical literature, and plaintiffs submitted three articles addressing the safest method to perform the LC, known as the CVS method. Curiously, on appeal, plaintiffs submit and argue that the articles support Dr. Drew's standard of care testimony. However, when questioned during his deposition, Dr. Drew could not identify in the articles that CVS was the standard of care and the preferred method by colleagues to perform the LC because of the reduction in common bile duct injuries. Rather, Dr. Drew acknowledged that there was no way to know if the CVS method lowered the bile duct injuries. The import given to the articles on appeal was not correlated by Dr. Drew in his testimony. Rather, Dr. Drew was forced to admit in his testimony that the infundibular approach used by defendant during the LC was within the standard of care.

To support a medical malpractice case, the plaintiff was required to prove: "(1) the applicable standard of care, (2) breach of that standard by defendant, (3) injury, and (4) proximate causation between the alleged breach and the injury." *Wischmeyer*, 449 Mich at 484. Plaintiffs failed to demonstrate that the standard of care for LC surgery was the CVS method and that the failure to perform the CVS method constituted a breach of the standard of care. Accordingly, because Dr. Drew's opinion testimony did not satisfy the criteria of MRE 702 and MCL 600.2955, the trial court properly granted defendants' motion for summary disposition.

Affirmed.

/s/ Michael J. Riordan
/s/ Stephen L. Borrello
/s/ Anica Letica

-13-